**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT KNOXVILLE**
**DECEMBER SESSION, 1998**

FILED

February 18, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | No. 03C01-9708-CR-00319 |
| **Appellee** | ) | |
| | ) | **HAMILTON COUNTY** |
| **vs.** | ) | |
| | ) | Hon. Stephen M. Bevil, Judge |
| **JAMES C. WOLFORD,** | ) | |
| | ) | **(Probation Revocation)** |
| **Appellant** | ) | |


For the Appellant:

**Don W. Poole**
Poole, Thornbury, Morgan &
 Richardson
732 Cherry Street
Chattanooga, TN 37402

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**R. Stephen Jobe**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493


**William H. Cox III**
District Attorney General

**Bates William Bryan, Jr.**
Asst. District Attorney General
600 Market Street
Third Floor, Court Building
Chattanooga, TN 37402


OPINION FILED: _____

AFFIRMED


**David G. Hayes**
Judge

**OPINION**

The appellant, James C. Wolford, appeals the revocation of his sentence of periodic confinement by the Hamilton County Criminal Court resulting in the reinstatement of his original sentence of four years in the Department of Correction.

The decision of the trial court revoking the appellant from his probationary status and reinstating the appellant's four year sentence is affirmed. However, this cause is remanded to the trial court for modification of the judgment to reflect suspension of the appellant's driver's license for a period of four years as authorized by law.

**Background**

At some time during the early morning hours of September 30, 1992, the appellant, a twenty-two year old Chattanooga entrepreneur, struck a pedestrian, Rodney Walker, with his BMW automobile, resulting in Walker's death. The appellant fled from the scene of the accident to the apartment of his girlfriend. He then returned home where he informed his father of the incident. His father escorted him back to the crime scene where the appellant admitted his involvement to law enforcement officers. Tests subsequently performed on both the deceased and the appellant revealed that both men were legally intoxicated at the time of the offense.

On December 10, 1996, the appellant pled guilty to one count of vehicular homicide as a result of intoxication, a class C felony, in the Hamilton County

Criminal Court. [1]  As provided in the negotiated plea agreement, the trial court imposed a sentence of four years in the Department of Correction.  The court suspended this sentence and imposed a sentence of periodic confinement, ordering the appellant to serve six months on work release at the Hamilton County Workhouse[2] followed by six years probation.   In pronouncing sentence, the court deferred entry of the judgment until December 10, 1997, at which time the court would determine whether the conviction should be diverted.

On June 4, 1997, the trial judge contacted the appellant's counsel, informing him that he was aware that the appellant had participated in a Muscular Dystrophy golf tournament[3] sponsored by Golden Gallon convenience stores and that he would conduct a hearing on the following day to determine whether the appellant had violated the terms of his work release.  The judge informed counsel that, if the appellant did not appear in court the next day, a warrant would issue for the violation.  The following day, June 5, the appellant, accompanied by counsel, appeared before the court.  The court informed the appellant of its knowledge of the appellant's participation in the golf tournament.  The appellant apologized and explained that his participation was for "business relations only."  The trial court then questioned the appellant as to "[h]ow many other times have you played golf since you have been on work release?"  The appellant responded that the Muscular Dystrophy tournament was the only time that he had played golf while on work release.  He stated that he is in the beverage distribution business and that Golden

---

[1]The appellant was previously granted pretrial diversion on the charge of leaving the scene of the accident arising from this same incident.  At the time of the appellant's guilty plea to vehicular homicide, the appellant had successfully completed his two year diversionary period, the charge was dismissed, and the records relative to this charge were ordered expunged.

[2]Specifically, the appellant was ordered to report to the Hamilton County Workhouse by 7:00 p.m. on December 26, 1996.  "From Monday through Friday of each week, the [appellant] shall be released from the . . . Penal Farm at 6:30 a.m. in order that he may report to his business . . . ."  "No later than 8:00 p.m. on each day the appellant shall report back . . for his incarceration."  "On Saturday of each week, the said Defendant shall be released from 6:30 am to 6:00 p.m."  "During the appellant's work release status from Monday through Saturday, he shall not be anywhere other than at his business or any location where his business takes him."  (Emphasis added).

[3]Apparently, the trial judge noticed the appellant's name in an article relating the charity golfing event in the local newspaper.

Gallon is his "biggest" account. Accordingly, he maintained that his participation in this golf tournament was "very much in association with his business." The trial court concluded that the appellant had violated the court's order and revoked the appellant's work release. The court also determined that the judgment should be entered at this time, concluding that there "were sufficient reasons why the court would not consider a deferred judgment even at a future date."

On June 9, 1997, the trial judge again summoned the appellant before the court to inform the appellant that it had come to the court's attention that the appellant may have made false statements to the court on June 5. The court advised the appellant and his counsel that the appellant was facing a revocation hearing for perpetrating a fraud upon the court by making false representations at the June 5th proceeding. Specifically, the trial court informed the appellant that, since the June 5th hearing, it had come to the attention of the court that the appellant had played in at least two other golf tournaments[4] despite the appellant's denial of such activity at the prior hearing. Accordingly, the trial court set a revocation hearing to be held on June 20th.[5]

On June 30, 1997, a revocation hearing was held. The appellant, now the twenty-seven year old president of a beverage distributing company, admitted that he had indeed played in two additional golf tournaments, the Moc Docs tournament for the University of Tennessee at Chattanooga and the Fellowship of Christian Athletes tournament. He explained that he had interpreted the conditions of his work release to permit him to go where his business carried him, which included places out of the ordinary due to his position as president of the company. Indeed, he stated that he played in the tournaments because no other individual in the company could effectively replace him and he needed to foster good relations with

---

[4]The court informed the appellant that the tournaments took place on April 30th and May 16th.

[5]This hearing was subsequently continued to June 30, 1997.

4

his clients. The appellant admitted that, after his release every day from the workhouse, he would travel home to shower and dress before going to work. He also confessed that he had attended marriage counseling sessions with his fiancee while on work release and he had, on occasion, gone to the driving range to hit practice golf balls.

At the conclusion of the hearing but before making his ruling, the trial judge appropriately observed:

> . . .Justice is supposed to treat everyone who comes before this Court the same. It doesn't matter what your financial situation, it doesn't matter what your race, your creed or religion, your sexual preference, it doesn't matter. This Court has to consider every one the same if justice is to be blind.
>
> . . .[T]he longer I'm a judge I find out that there are people who want justice to be blind unless it affects them . . . then let's lift the blindfold just a little bit, Judge, because this is a different situation. The Court can't do that. Whether Mr. Wolford comes from an affluent family or whether he comes from skid row makes no difference to this Court.
>
> I have to look at the facts and circumstances in Mr. Wolford's case the same as I would anyone here. . . . I have to look not only at what's best for Clinton Wolford, I have to look to see what's best for society, what's best for the community in its entirety because I'm held accountable not only for Mr. Wolford, but for everybody else in Hamilton County . . . .

The court then made its findings and entered its ruling in the present matter:

> I find. . . ample evidence to have set aside his work release. . . . Mr. Wolford has never . . . been willing to stand up and accept accountability and the responsibility for what he did beginning that very night when he started drinking and he ran over and hit Rodney Walker . . . .
> . . .
> Then he was placed on work release. Now, there's some as he says confusion in his mind as to whether or not he was allowed to play golf, but this Court finds that Mr. Wolford never really -- his lifestyle was never really altered while he was on work release. He left the workhouse. He went home. He showered. He changed clothes. He went to work when he wanted to. If he wanted to play golf, he played golf. If he wanted to go to business luncheons with clients, he went to business luncheons with clients. He went to marriage counseling sessions. In the afternoon before he went back to the workhouse he dropped by his house, took a shower, cleaned up. There has not been anything to indicate his lifestyle is any different because he was on work release. He was not being punished by his actions. He indicated by his conduct that he wasn't being punished.

5

It's been shown to the Court and . . . it's clear that he did not have to play in these golf tournaments. He played in them because he wanted to and not only did he play in these golf tournaments, but even if I granted him the benefit of the doubt and said, okay, Mr. Wolford, you played in these for business relationships, how in the world that justifies going to Moccasin Bend and hitting golf balls when he's supposed to be at work or in the workhouse? . . . It just shows me that he has not yet willing to have been able to stand up and accept the responsibility and accountability for what he did.

And then when confronted by that, and I asked him, "Mr. Wolford, have you played golf any other time other than . . . this tournament?" And he said, "No, I have not." Very emphatic, and Mr. Wolford's not a neophyte. He's 27 years old. He's a businessman that deals with presidents of companies. . . . He's got 10 to 12 employees. He meets with these business presidents so I don't find that he's naive as far as those types of things, and then when asked again today, "Why did you lie?"

And he said, "I didn't have an opportunity to consult with anybody else. I didn't have an opportunity to talk to anybody." Again, he's not willing to accept the accountability and responsibility. you either tell the truth or you tell a lie. . . . A very simple question, "Mr. Wolford, did you play golf any other time?" All he had to say was, yes, sir, I did, and we probably wouldn't be here today, but once again, not wanting to stand up and accept the responsibility and the accountability, he said, "No, that's the only time."

And then it was only today in his testimony when the Court quizzed him and I asked him, "Have there been other times that you played?"
"Oh, you mean played in golf tournaments?"
"No, have you played golf at any other time?"
"Well, I did hit range balls over at Moccasin Bend."

Mr. Wolford intentionally, deliberately lied to this Court. He misrepresented the facts as he's done so many times by his conduct to do what's in the best interest of Clint Wolford. It was in his best interest to lie to the Court and he did. You don't need time to consult with counsel when a question is asked of you and the answer is either yes or no and you tell the truth or tell a lie.

. . .

Mr. Wolford, you put me in a position where I can do nothing else. If there's going to be justice in this courtroom and that justice is going to apply across the board to each and every individual that comes before it, you've put me in a position by your actions, by your refusal to accept accountability and responsibility, by deliberately lying to this courtroom, to this Court other than to revoke your probation and order that your sentence be served.

6

## I. Nature of Sentence Imposed by Trial Court

Before addressing the merits of the appellant's issue, we are constrained to determine the exact nature of the sentence imposed by the trial court. As previously noted, the appellant, at the time of his revocation hearing, was serving a sentence of periodic confinement although no judgment had been entered in this case imposing any form of a sentence. The trial court's order specifically provided that entry of judgment was deferred for one year "at which time the court will review this matter." Moreover, the appellant, as required by the judicial diversion statute, Tenn. Code Ann. § 40-35-313, was never placed under any supervisory agency. The arrangement, thus, was one without the benefit of statutory authority. The State and the appellant agree that the trial court's reference to the sentencing provision of "six months on work release" constitutes more properly, periodic confinement, see Tenn. Code Ann. §40-35-307, as it fails to comport with the provisions of Tenn. Code Ann. §40-35-315. Accordingly, the appellant argues that he, although periodically confined, was technically under no sentence as no judgment had been entered.

From the terms of the trial court's order, it appears that the trial court granted the appellant a six year period of probation pursuant to the judicial diversion provisions of Tenn. Code Ann. § 40-35-113.[6] As a condition of this probation, the

---

[6]The trial court's order following the appellant December 10, 1996, guilty plea provides in pertinent part:

> Because of the application of the Defendant for judicial diversion and the State not objecting to the same, but not thereby agreeing to the same, the Court defers entry of judgment at this time for a period of one year and until December 10, 1997, at which time the Court will review this matter.

> As a condition of probation pursuant to Tennessee Code Annotated 40-35-313, the Defendant shall report to the custody of the Hamilton County Workhouse no later than 7:00 p.m. on December 26, 1996, to complete a term of six months on a work release basis. . . .

> It is further Ordered that as a condition of the deferral of the entry of judgment herein, the Defendant is prohibited from driving for a period of one year, from December 10, 1996, until December 10, 1997.

> It is further Ordered that Defendant's sentence if not diverted shall be to a term of 4 years as a standard range one offender. It is further Ordered that during the

trial court ordered the appellant to serve six months in the workhouse on work release status.

There is little dispute that imposing a jail term as a condition of probation is incompatible with the provisions of the judicial diversion statute, Tenn. Code Ann. § 40-35-313 (1996 Supp.). See State v. Cable, No. 03C01-9409-CR-00349 (Tenn. Crim. App. at Knoxville, Jun. 1, 1995); Criminal Cases - Post Conviction Deferral-Procedure, Tenn. Op. Atty. Gen. No. 92-33 (Apr. 16, 1992). Inasmuch as no judgment of guilt is to be entered when judicial diversion is granted, the trial court would not be authorized to sentence the defendant to a period of confinement. Cable, No. 03C01-9409-CR-00349 at n. 4; Tenn. Op. Atty. Gen. No. 92-33. Thus, although the court may impose a fine or may require reasonable public service, or both, as a condition of judicial diversion, it may not require confinement in the workhouse. Tenn. Op. Atty. Gen. No. 92-33. Accordingly, the trial court erred in imposing a six month period of work release in the workhouse as a condition of probation under Tenn. Code Ann. §40-35-313.

If the trial court's sentence is unauthorized, we must then determine the sentence contemplated by the court in view it's pronouncement, *i.e.*, a grant of judicial diversion without confinement or a sentence of periodic confinement coupled with probation. A trial court, within its discretion, may grant diversion to a defendant who "has not previously been convicted of a felony or a class A misdemeanor;" and "is found guilty or pleads guilty to a misdemeanor which is punishable by imprisonment or a Class C, D, or E felony." Tenn. Code Ann. § 40-35-313(a). If the court grants diversion, the court may "without entering a judgment of guilty and with the consent of the [defendant] . . . defer further proceedings and place the person on probation upon such reasonable conditions as it may require . . ." Tenn. Code

pendency of the deferral of the entry of the judgment, the Defendant shall at the expiration of the 6 months report to the Office of Probation and Parole. . . and shall abide by the normal conditions of probation under active supervision for a period of 6 years, pending further Orders of the Court.

8

Ann. § 40-35-313(a)(1)(A). If the candidate for judicial diversion successfully completes his term of probation, the court shall dismiss the case "without adjudication of guilt." Tenn. Code Ann. § 40-35-313(a)(2). However, a conviction may be entered where the defendant fails to fulfill his obligations of probation. See State v. Udzinski, No. 01C01-9610-CC-00431 (Tenn. Crim. App. at Nashville, Feb. 5, 1998).

Essentially, judicial diversion is post-conviction pretrial diversion. The difference between the two being that judicial diversion follows a determination of guilt and the decision to grant diversion rests with the trial court, not the prosecutor. See State v. Anderson, 857 S.W.2d 571, 572 (Tenn.Crim.App. 1992). The pretrial diversion statute, Tenn. Code Ann. 40-15-105(a)(1) (1995 Supp.), specifically excludes those persons charged with vehicular homicide by intoxication from eligibility. See State v. Burdine, 888 S.W.2d 463, 465 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1994); see also Availability of Pre-Trial Diversion in Vehicular Assault and Vehicular Homicide Cases, Tenn. Op. Atty. Gen. No. 93-34 (Apr. 6, 1993). Cf. State v. Rhodes, 917 S.W.2d 708, 711-13 (Tenn. Crim. App. 1995), perm. to appeal denied, (Tenn. 1996). See, e.g., State v. Wolford, No. 03C01-9308-CR-00259 (Tenn. Crim. App. at Knoxville, Mar. 6, 1995), perm. to appeal denied, (Tenn. Jul. 3, 1995) (pretrial diversion denied where defendant charged with vehicular homicide by intoxication). Thus, pre-trial diversion may not be granted to those charged with vehicular homicide by intoxication under Tenn. Code Ann. § 39-13-213(a)(2) (1991).

"Tennessee courts have recognized the similarities between judicial diversion and pretrial diversion and, thus, have drawn heavily from the case law governing pretrial diversion to analyze cases involving judicial diversion." State v. Cutshaw, 967 S.W.2d 332, 343 (Tenn. Crim. App. 1997). We find no reason to do differently. Indeed, it would be illogical for this court to conclude that those charged

9

with vehicular homicide by intoxication should remain eligible for a grant of judicial diversion while being foreclosed from seeking pretrial diversion. Cf. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-313 ("[Judicial diversion] appl[ies] to all misdemeanors except for driving under the influence and driving on a canceled, suspended or revoked license."). Accordingly, the appellant, in the case *sub judice*, was not eligible for a grant of judicial diversion. Thus, this court interprets the sentence imposed by the trial court to be that of periodic confinement coupled with a term of probation.

## II. Revocation of Probation

The appellant contends that the trial court abused its discretion in revoking his probation. Encompassed within this broad challenge, the appellant complains that he was not provided adequate, *i.e.,* written, notice of the revocation proceeding, thereby violating his due process rights. He also asserts that he did not violate the conditions of his work release because "playing golf" is "in the course of" his business.

When it comes to the attention of a trial court that a defendant who has been released upon suspension of sentence has been guilty of breach of the laws of this state or has violated the conditions of probation, the court has the power to issue a warrant for the defendant's arrest for this violation. Tenn. Code Ann. § 40-35-311(a) (1996 Supp.). See also State v. Stubblefield, 953 S.W.2d 223, 224-25 (Tenn. Crim. App. 1997). The court must hold a hearing at the earliest practicable time. During this hearing, the court is empowered to revoke the defendant's probation if the court should find by a preponderance of the evidence that the defendant has so violated the conditions of his probation. Tenn. Code Ann. § 40-35-311(b), -(d). In other words, the proof of the violation need not be established beyond a reasonable

doubt. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Rather, the proof is sufficient if it allows the trial court to make a conscientious and intelligent decision. Id. (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)).

On appeal, the findings of the trial court have the weight of a jury verdict, and, as such, a reviewing court may not disturb the trial court's ruling absent a clear abuse of discretion. Harkins, 811 S.W.2d at 82 (citing State v. Williamson, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). To find an abuse of discretion, the reviewing court must conclude that the record contains no substantial evidence to support the decisions of the trial court. Harkins, 811 S.W.2d at 82 (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978), cert. denied, 439 U.S. 1077, 99 S.Ct. 854 (1979)).

## A. Inadequate Notice

A defendant who is granted probation has a liberty interest that is protected by due process of law. See Stubblefield, 953 S.W.2d at 225 (citing Practy v. State, 525 S.W.2d 677, 680 (Tenn. Crim. App. 1974)). Inherent within the defendant's due process rights is the right to written notice of the allegations which form the basis for the proposed revocation of his sentence. See Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S.Ct. 1756, 1761-62 (1973); State v. Wade, 863 S.W.2d 406, 408 (Tenn. 1993); Practy, 525 S.W.2d at 679-80. Failure to provide such notice offends due process. See State v. Worley, No. 03C01-9608-CR-00322 (Tenn. Crim. App. at Knoxville, Aug. 29, 1997) (citing Gagnon, 411 U.S. at 786, 93 S.Ct. at 1761-62; Wade, 863 S.W.2d at 408). The appellant, although conceding oral notice, complains that, because the trial court failed to provide him written notice of his violation, he was denied due process of law.

As commonly understood, the function of notice is to provide forewarning to the person sought to be charged of the existence of the particular facts in question

11

or to enable him of acquiring the means of knowing it. See generally 58 AM.JUR.2D *Notice* § 2, § 6 (1989); BLACK'S LAW DICTIONARY 1061,1062 (6th ed. 1990). Although the appellant was not provided written notice, the trial court did, on June 9, 1997, more than adequately inform in open court both the appellant and his counsel of the reasons for the upcoming revocation proceeding. This court has on previous occasions ruled that oral notice, constituting actual notice, is sufficient to satisfy constitutional requirements of due process regarding a probation revocation hearing. See. e.g., State v. Peck, 719 S.W.2d 553, 556-557 (Tenn. Crim. App. 1986); State v. Carden, 653 S.W.2d 753, 754-55 (Tenn. Crim. App. 1983); Stamps v. State, 614 S.W.2d 71, 73-74 (Tenn. Crim. App. 1980). Although written notice may be preferred, we conclude that the appellant was not prejudiced, misled, or surprised by the court's failure to issue written notice. Thus, the appellant's claim of procedural due process error is without merit.

## B. Propriety of Revocation

Next, there is no dispute in the record that, while on work release status, the appellant, by his own admission, played in three golf tournaments, hit practice golf balls during his lunch hour, attended marriage counseling sessions during his lunch hour, and casually engaged in other non-business related activities. This court finds no reason to dispute the trial court's finding that the appellant's participation in these golf outings does not amount to business related matters as the appellant was not required to participate in these events. See State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995) (evidence need only show that trial court exercised a conscientious and intelligent judgment in making the decision to revoke the probation). We agree that these activities violated the conditions of the appellant's work release. See, e.g., State v. Bonner, No. 01C01-9710-CR-00446 (Tenn. Crim. App. at Nashville, Aug. 5, 1998) (violation of conditions of work release sufficient to revoke defendant from probated sentence).

12

In addition to the appellant's clear violation of the agreed to conditions of his work release status, the trial court also considered, as a basis for revocation, the appellant's untruthfulness to the court at the previous June 5th hearing. It is clear from the record that the appellant made a false statement to the trial court at the June 5th hearing by denying any participation in any golfing events except for the Muscular Dystrophy tournament. While we acknowledge, as argued by the appellant, that his false statements were not made under oath and, thereby, not a "breach of the laws of this state," see Tenn. Code Ann. § 40-35-311(a)(1996 Supp.), we recognize that no court system can function without safeguards against actions that interfere with its administration of justice. As such, it would be illogical to assume that a probationer is required, as a condition of probation, to make "full and truthful reports" to his/her probation officers,[7] but be permitted to make deliberate and inaccurate representations to the court. We can reach no legitimate conclusion other than finding that a probationer has an obligation to be candid with the court as an implied condition of probation.

Indeed, the purpose of probation is to give a defendant an opportunity to be rehabilitated under proper control and supervision. A trial court, in its discretion, may revoke a probationer from this release status if the probationer demonstrates that he is no longer entitled to such a release status. As understood by the courts of this state and as directed by our sentencing provisions, a probationer is not entitled to remain on release status if he has shown that he cannot comply with the laws of this state, that he has violated a condition of his probation, or that he has not demonstrated behavior indicating good citizenship. This suggests that a probationer

---

[7]The following cases held revocation proper where probationer failed to make a full and truthful report to his probation officer. See, e.g., State v. Gray, No. 01C01-9702-CC-00058 (Tenn. Crim. App. at Nashville, Mar. 24, 1998); State v. Johnson, No. 03C01-9705-CR-00175 (Tenn. Crim. App. at Knoxville, Feb. 13, 1998), perm. to appeal denied, (Tenn. Nov. 2, 1998); Portal v. State, 675 So.2d 708 (Fla. Dist. Ct. App. 3d 1996); Edwards v. Florida, 561 So.2d 1354 (Fla. Dist.. Ct. App. 1990); State v. Jones, 847 P.2d 1176 (Idaho Ct. App. 1993). Indeed, a probationer's release status has been revoked for the wilful misrepresentation of his name, the names of his family member and his prior criminal record to his probation officer. See Roseboro v. State, 528 So.2d 499 (Fla. Dist. Ct. App.1988).

13

may be revoked if his conduct demonstrates that probation is not achieving its rehabilitative purpose. See State v. Lee, 773 P.2d 655, 657 (Idaho Ct. App. 1989) (citations omitted). Certainly, a probationer's dishonesty with the trial court is an important measure in determining whether a probationary status is effective on this particular probationer. While the appellant's dishonesty with the trial court is not a specifically enumerated ground for revocation, it remains an action contrary to societal notions of honesty and uprightness and reflects an unwillingness to admit one's wrongs. Cf. State v. Dowdy, 894 S.W.2d 301, 306 (Tenn.Crim.App.1994) (lack of candor sufficient ground to deny probation).

In the opinion of this court, the trial court expressed sound and just reasoning in concluding that further probation in the present case was inappropriate. We conclude that the trial court did not abuse its discretion in revoking the appellant's probated sentence. Finding no error in the court's decision, we affirm the order revoking probation.

### III. Conclusion

The judgment of the trial court revoking the appellant's probation is affirmed. Additionally, we note that the trial court's suspension of the appellant's driver's license for a period of one year is in error. Tennessee law provides that "[t]he court shall prohibit a defendant convicted of vehicular homicide from driving a vehicle in this state for a period of time not less than three (3) years nor more than ten (10) years." Tenn. Code Ann. § 39-13-213 (c). Thus, this case is remanded to the trial court for modification of its order to reflect that the appellant's driver's license shall be suspended for a period of four years. See Cheairs v. State, No. 02C01-9304-CC-0070 (Tenn.Crim.App. Oct. 26, 1994) ("Tennessee law gives the courts authority to correct an illegal sentence at any time, even if it has otherwise

14

become final.") ( citing State v. Burkhart, 566 S.W.2d 871, 873 (Tenn.1978)).


_____
DAVID G. HAYES, Judge


CONCUR:


_____
JERRY L. SMITH, Judge


_____
JAMES CURWOOD WITT, JR., Judge