# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 16, 2001

## STATE OF TENNESSEE v. STEPHEN E. CLINE

**Appeal as of Right from the Criminal Court for Overton County**
**No. 4012-4015     Lillie Ann Sells, Judge**

---

**No. M2000-01674-CCA-R3-CD - Filed October 30, 2001**

---

The appellant, Stephen E. Cline, pled guilty in the Overton County Criminal Court to four counts of obtaining a controlled substance by forgery, and the trial court imposed concurrent sentences of four years incarceration in the Tennessee Department of Correction.  The trial court granted the appellant judicial diversion and placed him on probation for four years.  Subsequently, the appellant was arrested for driving under the influence (DUI) and failing to comply with the implied consent law.  A warrant for revocation of probation and judicial diversion was issued alleging the foregoing offenses and contending that the appellant had fraudulently obtained a controlled substance. Pursuant to a hearing, the trial court revoked the appellant's probation and entered judgments of conviction for all four counts of obtaining a controlled substance by forgery.  On appeal, the appellant raises the following issues for our review: (1) whether there was sufficient evidence for the trial court to find that the appellant violated his probation and judicial diversion; (2) whether the trial court violated the appellant's right to confrontation in admitting hearsay statements during the hearing; (3) whether the trial court violated the appellant's due process rights by failing to bifurcate the probation revocation proceedings; and (4) whether the trial court erred in failing to consider all of the proof before forming an opinion on the case.  Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Michael R. Giaimo, Livingston, Tennessee, and Gary Lovellette, Cookeville, Tennessee, for the appellant, Stephen E. Cline.

Paul G. Summers, Attorney General and Reporter; Laura E. McMullen, Assistant Attorney General; William E. Gibson, District Attorney General; and Owen G. Burnett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. Factual Background

Following the appellant's February 24, 1999 guilty pleas to three counts of obtaining a schedule III controlled substance by forgery and one count of obtaining a schedule V drug by forgery, the trial court granted the appellant judicial diversion, see Tenn. Code Ann. § 40-35-313(a)(1)(A) (1997), and placed him on probation for four years. The trial court specified that the first two years would be spent on supervised probation and the remaining two years on unsupervised probation.

On March 21, 2000, Officer Bill Randolph received two separate complaints regarding a brown Ford pickup truck with the tag number 515 TRW. The first call, received at 11:25 a.m., alleged that a truck was seen driving erratically and running vehicles off the road. The second call, which was placed by an Arby's restaurant employee at 1:30 p.m., alleged that an individual sitting in a brown truck in the Arby's parking lot appeared to be smoking a marijuana cigarette. After patrolling the area, Officer Randolph located the vehicle in the parking lot of Dr. Steve Ellis' dental office. The appellant was sitting on the driver's side of the truck. Officer Randolph approached the vehicle and asked the appellant to step outside the truck in order to perform field sobriety tests. Officer Randolph contended that the appellant performed poorly on all of the tests given; therefore, he concluded that the appellant was under the influence of an intoxicating substance. Officer Randolph then asked the appellant to take a test to determine the appellant's level of intoxication,[1] but the appellant refused to comply with the request. As a result, Officer Randolph placed the appellant under arrest for violating the implied consent law and driving under the influence. Subsequently, Officer Randolph searched the appellant and found a cut-off straw in the appellant's shirt pocket. Additionally, he found pills of an unknown type in the appellant's vehicle. At the appellant's probation revocation hearing, Officer Randolph explained that a cut-off straw is often adapted by drug users to "handle their drugs through their nose, powdered drugs." Furthermore, Captain Tim Emerton testified that the pills found in the appellant's vehicle could be crushed and then inhaled through the straw.

Additionally, in March through May of 2000, the appellant's six-year-old stepson, Christian Boles, was taking the prescription drug Aderall,[2] a controlled substance, to treat his Attention Deficit Disorder (ADD). Some of Boles' medication had been taken to Algood Elementary School so that school personnel could administer Boles' afternoon dose. Melissa Moss, Boles' teacher, testified at the appellant's probation revocation hearing that Boles' mother, Roxanne Cline, and the appellant had picked up all of Boles' medication, averring that they were taking Boles off of the medication. However, soon thereafter the school was given more medication for Boles. Moss further testified that this pattern was repeated several times. Dr. John Clough, Boles' physician, testified that he never recommended that Boles discontinue taking the Aderall. Additionally, Dr. Clough testified that, on several occasions, the appellant and Cline asked for

---

[1] The record does not reflect the nature of the test Officer Randolph requested the appellant take.

[2] We note that this medication is also spelled "Adderall" in various portions of the record. According to the testimony of Dr. Clough, the medication is "a stimulant of the amphetamine class" which would cause a person to feel "euphoria and lots of energy."

additional prescriptions due to "lost" or "destroyed" medication. Specifically, Dr. Clough recalled that, on May 6, 2000, the appellant and Cline came to his home and requested additional medication for Boles. They explained that, earlier that morning, orange juice had been spilled on the medication. They requested fourteen additional pills. Later, on May 7, 2000, the appellant came to Dr. Clough's home and advised that they needed forty pills, not fourteen. Nonetheless, on May 8, 2000, the appellant and Cline sent a letter to Boles' school instructing the school officials to return the remainder of Boles' medication because Boles had an appointment with a psychiatrist and they wanted the psychiatrist to see Boles in an unmedicated state. After Dr. Clough was informed of the parents' pattern of withdrawing Boles' medication from the school, he "called the Department of Human Services to make sure that they were looking into this to see if [Boles] was getting his medication or not."

A probation revocation warrant was issued, alleging that the appellant had violated his probation by driving under the influence, violating the implied consent law, possessing drug paraphernalia, and obtaining prescription amphetamines by fraud. Subsequent to a hearing, the trial court found that the appellant had violated his probation associated with judicial diversion on all of the alleged grounds. Therefore, the court revoked the appellant's probation and entered judgments of conviction for the four counts of obtaining a controlled substance by forgery, imposing concurrent sentences of four years incarceration in the Tennessee Department of Correction. The appellant currently contests the trial court's ruling on appeal.[3]

## II. Analysis
### A. Bifurcation

The appellant argues at length that the trial court should have granted him a "preliminary hearing prior to the final hearing" in order to comply with the mandates of <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 781-2, 93 S. Ct. 1756, 1759-60 (1973). This court recently summarized the following "'minimum requirements of due process'" that <u>Scarpelli</u> instructs must be afforded to an appellant in a probation revocation hearing:

"(a) written notice of the claimed violations of [probation or] parole;
(b) disclosure to the [probationer or] parolee of evidence against him;
(c) opportunity to be heard in person and to present witnesses and documentary evidence;
(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);
(e) a neutral and detached hearing body . . . ; and
(f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole."

<u>State v. Eva Henry</u>, No. M1999-2582-CCA-R3-CD, 2000 WL 1208313, at *4 (Tenn. Crim. App. at Nashville, August 24, 2000) (alterations in original) (quoting <u>Scarpelli</u>, 411 U.S. at 786, 93 S. Ct. at 1761). We note that this court has repeatedly held that the probation revocation procedures

_____

[3] We have chosen to address the appellant's issues in an order different from that presented by the appellant.

employed in this state sufficiently comply with the dictates of Scarpelli. See Practy v. State, 525 S.W.2d 677, 682 (Tenn. Crim. App. 1974); see also Massey v. State, 929 S.W.2d 399, 401-2 (Tenn. Crim. App. 1996). Specifically, this court has previously rejected similar claims alleging a violation of constitutional rights because of the lack of a preliminary hearing, finding that "Gagnon v. Scarpelli [does] not require a preliminary hearing in the context of Tennessee's statutory scheme . . . [because] Tennessee's statutory scheme fully complie[s] with all constitutional requirements." State v. Terry Lynn Bumpus, No. 89-180-III, 1990 WL 17774, at *1 (Tenn. Crim. App. at Nashville, March 1, 1990). This issue is without merit.

### B. Right to Confrontation

The appellant contends that the trial court violated the appellant's right to confrontation by admitting certain hearsay testimony. The right to confrontation is contained in Amendment VI to the United States Constitution, which provides that the accused has the right "to be confronted with the witnesses against him." Additionally, Article I, § 9 of the Tennessee Constitution explains that "the accused hath the right . . . to meet the witnesses face to face." However, "the right to confront and cross-examine an adverse witness 'is not absolute and may be relaxed' in a probation revocation hearing." State v. Moss, 13 S.W.3d 374, 386 (Tenn. Crim. App. 1999) (quoting State v. Wade, 863 S.W.2d 406, 407 (Tenn. 1993)). Moreover, "the right to cross-examine witnesses in such a proceeding may be denied by the trial court upon a finding of good cause." Id.; see also Scarpelli, 411 U.S. at 786, 93 S. Ct. at 1762. Regardless, "even where there is a showing of good cause, due process requires proof that the [evidence] is reliable." Wade, 863 S.W.2d at 408. In sum, this court has explained that

> hearsay evidence is admissible at a probation revocation hearing, thus depriving the probationer of the right to cross-examination, when minimum confrontation requirements . . . are met . . . includ[ing] (1) a specific finding by the trial court of "good cause" that would justify the denial of the defendant's right to confront and cross-examine an adverse witness; and (2) a showing that the information contained in the [hearsay testimony] is reliable.

State v. Joyce Newman, No. M1999-00161-CCA-R3-CD, 2000 WL 994358, at *4 (Tenn. Crim. App. at Nashville, July 12, 2000) (citations omitted).

The appellant complains that the trial court erred in admitting Dr. Clough's testimony regarding a conversation he had with Dr. Coburn, his medical partner, which detailed a telephone conversation Dr. Coburn had with Mark Boles, Cline's ex-husband and Boles' biological father. Dr. Coburn related that Mark Boles was concerned that someone was stealing Boles' Aderall and was replacing it with aspirin. The appellant objected to this testimony on the grounds that it contains double hearsay. The trial court overruled the appellant's objection stating, "That is not hearsay. This is from the same office and a practicing physician treating the child."

Tenn. R. Evid. 801(c) provides that hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally, "[h]earsay is not admissible except as provided by [the Tennessee Rules

of Evidence] or otherwise by law." Tenn. R. Evid. 802. We agree with the appellant that there are two layers of hearsay contained in the contested statement; first, the conversation between Mark Boles and Dr. Coburn, and, second, the dialogue between Dr. Coburn and Dr. Clough.[4] The trial court did not specifically find that there was "good cause" for not calling Dr. Coburn or Mark Boles as witnesses, thereby violating the appellant's right to confrontation. Additionally, there is no significant showing in the record that either layer of hearsay is reliable. Therefore, notwithstanding the "lesser degree of formality and inflexibility" of a probation revocation hearing, we conclude that the trial court erred in allowing this statement into evidence over the appellant's objection. Alejandros Gauna v. State, No. 01C01-9512-CC-00422, 1997 WL 71824, at *2 (Tenn. Crim. App. at Nashville, February 20, 1997).

Regardless, we find that the admission of this testimony is harmless beyond a reasonable doubt. See Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b). It is well-established that a conviction need not be reversed due to an error of constitutional dimensions as long as the State demonstrates "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967); see also State v. Anthony H. Dean, No. W2000-01156-CCA-R3-CD, 2001 WL 1150309, at *15 (Tenn. Crim. App. at Jackson, September 28, 2001). There was sufficient testimony concerning the suspicious circumstances surrounding the disappearance of Boles' medication to revoke the appellant's probation and judicial diversion without consideration of the aforementioned statement. Therefore, "[o]ther evidence exists regarding the appellant's guilt. [Accordingly,] [w]e conclude the outcome of the [hearing] would not have been different had the statement[] not been presented [at the hearing]." State v. Land, 34 S.W.3d 516, 530 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 2000). Moreover, alternate grounds exist for the probation revocation, namely DUI, violating the implied consent law, and possessing drug paraphernalia. These grounds are sufficient to justify the probation revocation.

C. Probation and Judicial Diversion Revocation

Next, we will address the appellant's challenge to the sufficiency of the evidence supporting the revocation of his probation and judicial diversion. In State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991) (citations omitted), our supreme court explained that

> a trial judge may revoke a sentence of probation . . . upon a finding
> that the defendant has violated the conditions of his probation . . . by
> a preponderance of the evidence. The judgment of the trial court in
> this regard will not be disturbed on appeal unless it appears that there
> has been an abuse of discretion. In order for a reviewing court to be
> warranted in finding an abuse of discretion in a probation revocation
> case, it must be established that the record contains no substantial

---

[4] Additionally, Dr. Clough read from Boles' medical records a statement that was recorded by Dr. Coburn concerning Mark Boles' comments. While statements made for the purpose of diagnosis and treatment and medical records are generally admissible as an exception to the rule excluding hearsay, see Tenn. R. Evid. 803(4) & (6); see also State v. Goldston, 29 S.W.3d 537, 541 (Tenn. Crim. App. 1999), there is no evidence that any attempt was made to introduce Boles' medical records at the hearing.

evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred. The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment.

At the probation revocation hearing, the appellant conceded that he refused to submit to a test to determine his level of intoxication and thereby violated the implied consent law.[5] Additionally, the appellant admitted that he performed poorly on the field sobriety tests; however, the appellant contended that his performance was impaired because he had an extensive cut on the bottom of his foot, and he was exhausted because he had not gotten much sleep the night before. Officer Randolph admitted that he did not smell alcohol on the appellant but maintained that, due to the appellant's performance on the field sobriety tests, he concluded that the appellant was under the influence of a controlled substance.[6] See Tenn. Code Ann. § 55-10-401(a)(1) (1998). Additionally, Officer Randolph testified that the appellant never informed the officer that he had a cut foot at the time of the field sobriety tests, even after the officer "asked [the appellant] if he had any problems with his knees or legs." Based upon this evidence, the trial court reasonably found by a preponderance of the evidence that the appellant committed the offense of DUI and violated the implied consent law. See Tenn. Code Ann. § 40-35-311(e) (2000) (providing that the trial court may revoke a defendant's probation if satisfied that "the defendant has violated the conditions of probation and suspension by a preponderance of the evidence"). One of the conditions of the appellant's probation and judicial diversion is as follows:

> 3. The defendant shall not violate any law of the United States of America, the State of Tennessee, or any other state in which the defendant may be, or any ordinance of a municipality having

---

[5] Tenn. Code Ann. § 55-10-406(a) (1998) provides:

> (1) Any person who drives any motor vehicle in the state is deemed to have given consent to a test for the purpose of determining the alcoholic or drug content of that person's blood; provided, that such test is administered at the direction of a law enforcement officer having reasonable grounds to believe such person was driving while under the influence of an intoxicant or drug, as defined in § 55-10-405. . . .

> . . .

> (3) If such person having been placed under arrest and thereafter having been requested by a law enforcement officer to submit to such test and advised of the consequences for refusing to do so, refuses to submit, the test shall not be given, and such person shall be charged with violating this subsection.

[6] We note that the transcript of the probation revocation hearing reflects that Officer Randolph also authenticated a videotape of the appellant's performance on the field sobriety tests. The trial court placed " a great deal of weight on the video tape" in making the decision to revoke the appellant's probation and judicial diversion. However, the appellant has neglected to include this videotape in the record for our review. The appellant bears the burden of ensuring that the record on appeal conveys a fair, accurate, and complete account of what transpired in the lower court with respect to the issues presented for our review. See State v. Boling, 840 S.W.2d 944, 951 (Tenn. Crim. App. 1992).

jurisdiction over the defendant; and the defendant shall not engage in conduct inconsistent with good citizenship. The defendant shall not participate in any activity which results in the defendant being arrested by a law enforcement official.

The violation of this condition alone is sufficient to warrant the revocation of the appellant's probation and judicial diversion.

The trial court also found, by a preponderance of the evidence, that the appellant was in possession of drug paraphernalia when he was arrested by Officer Randolph. See Tenn. Code Ann. § 39-17-425(a)(1) (1997). In the appellant's shirt pocket, Officer Randolph found a cut-off straw. At the hearing, both the appellant and Cline claimed that they regularly cut straws in order for their three-year-old daughter to drink more easily from a cup while sitting in her car seat. However, Captain Emerton testified that, based on his experience in the field of illegal drugs, the item "was a small piece of cut off straw that is used for inhaling narcotics through the nose." Officer Randolph also testified that the straw could be used for inhaling various types of controlled substances. Additionally, the officers found "foreign medicine" in the truck that had not been identified by the time of the hearing. Moreover, although the officer did not detect the smell of alcohol, the appellant appeared intoxicated when the officers found the straw on his person. While this evidence alone may be insufficient to sustain a conviction for possession of drug paraphernalia, it is sufficient for the trial court to find the offense *by a preponderance of the evidence*.

The trial court also found that the appellant had fraudulently obtained his stepson's medication, a controlled substance, in violation of Tenn. Code Ann. § 53-11-402(a)(3) (1997). Summarizing the testimony of Dr. Clough and Moss, the evidence showed that, under suspicious circumstances, the appellant and Cline removed Boles' medication from school claiming they wanted to take Boles off the medication while almost simultaneously requesting additional prescriptions from Dr. Clough. We conclude that this evidence is adequate to support the trial court's finding by a preponderance of the evidence that the appellant's probation and judicial diversion should be revoked.

### D. Trial Court's Ruling

As his final issue, the appellant complains that "[t]he [t]rial [c]ourt erred in failing to hear all of the proof before forming a[n] opinion on the case because due process requires the [t]rial [c]ourt to weigh all proof before rendering a decision." Specifically, the appellant argues that, "[t]he [t]rial [c]ourt in response to a hearsay objection from the State expressed a premature opinion or decision in the instant case by stating 'it doesn't matter at this point, but I will listen to it.'" the State contends that the trial court was merely stating that, because hearsay testimony had previously been introduced during the probation revocation hearing, the introduction of additional hearsay testimony would have little effect on her decision. After reading the transcript of the probation revocation hearing, we agree with the State.

Cline attempted to explain one instance of Boles' missing medication by relating that Boles told her that he had flushed his pills down the toilet so that he could keep pennies he was

collecting for school in the bottle. The State objected, arguing that Boles' comments to Cline would be hearsay. The court responded by saying that 'it doesn't matter at this point, but I will listen to it." It appears that, because the trial judge's comment directly followed a hearsay objection much like those the trial court had previously overruled, the trial court was referring to the admission of additional hearsay testimony. Additionally, we note that testimony similar to that offered by Cline was previously admitted, without objection, through Moss, Boles' teacher. Moreover, the trial court clearly stated prior to her ruling that "[t]his [c]ourt has heard and is considering all the evidence that has been entered into this record, as well as all of the testimony of all the witnesses in this case, and the closing arguments by the counsel of record." Furthermore, the trial judge proceeded to detail all of the evidence she considered in reaching her decision. This issue is without merit.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE