**Jimmy L. PRACTY, Plaintiff-in-Error,**

v.

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

Nov. 7, 1974.

Certiorari Denied by Supreme Court
June 9, 1975.

Walker Gwinn, Asst. Public Defender, Memphis (Court-appointed), for plaintiff-in-error.

David M. Pack, Atty. Gen., Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, James G. Hall, Asst. Dist. Atty. Gen., Memphis, for defendant-in-error.

OPINION

OLIVER, Judge.

Jimmy L. Practy's sentence to imprisonment in the Shelby County workhouse for

11 months and 29 days adjudged on 9 April 1973 upon his guilty-plea conviction of petit larceny, was suspended the same day by the court and he was placed on probation for 18 months.

In a T.C.A. § 40–2907 petition filed September 11, 1973 seeking revocation of Practy's sentence suspension and probation, the Shelby County District Attorney General charged that on 17 July 1973 the Shelby County Grand Jury indicted him for third degree burglary and for receiving and concealing stolen property, and that on 3 August 1973 he entered a plea of guilty to the offense of attempting to commit a felony and was sentenced to 11 months and 29 days in the Shelby County Penal Farm and to pay a one dollar fine. The trial judge entered an order on September 11, 1973 directing the clerk to have a copy of the petition served upon Practy, requiring him to answer the petition and to appear at 9:30 a. m. on 8 October 1973 "to show cause if any he should have, why his suspension of sentence should not be revoked for his alleged failure and refusal to abide by the conditions of the probation order heretofore rendered in this cause."

Represented by the Shelby County Public Defender's office, Practy responded to that petition on September 20, 1973 by filing a pleading designated as a plea in abatement (erroneously so designated because it did not meet the requirements of such a plea) in which he admitted the petition correctly stated he was granted a suspended sentence and placed on probation after his plea of guilty to petit larceny, and acknowledged that the petition "was duly served in the Shelby County Jail, where he is serving eleven (11) months and twenty-nine (29) days for a subsequent charge." He then charged that he was never given a preliminary or final revocation hearing as required by *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and moved the court to dismiss the revocation petition for that reason and to order the State to give him a revocation hearing.

After a hearing on the petition the trial judge entered judgment dismissing Practy's plea and revoking the suspension of his sentence and ordering it executed, from which he was granted and has duly perfected an appeal to this Court and urges here the same insistence advanced in his plea in the trial court.

In *Gagnon v. Scarpelli, supra,* Scarpelli pleaded guilty to a charge of armed robbery in Wisconsin. The trial judge sentenced him to imprisonment for 15 years, but suspended the sentence and placed him on probation for seven years in the custody of the Wisconsin Department of Public Welfare. The order placing him on probation provided, among other things, that "[i]n the event of his failure to meet the conditions of his probation he will stand committed under the sentence all ready [sic] imposed." Under an agreement signed by him setting out the terms of his probation he agreed to make a sincere attempt to avoid violation of law, and under a Travel Permit And Agreement To Return he was allowed to reside in Illinois pursuant to an interstate compact and was accepted for supervision by the Adult Probation Department of Cook County, Illinois. The very next day Illinois police caught him and another in the act of burglarizing a house. Without a hearing of any kind, the Wisconsin Department of Public Welfare revoked his probation upon the grounds that (1) he had associated with known criminals in violation of his probation regulations and his supervisor's instructions, and that (2) he had, while associating with the other named burglar, been involved in and arrested for a burglary in Deerfield, Illinois, and he was incarcerated in the Wisconsin State Reformatory to begin serving his 15-year sentence. Three years later he filed a federal habeas corpus petition in which he claimed that his admission of participation in the burglary was made under duress and was false and charged that the revocation of his probation without a hearing and the assistance of counsel was a denial of due process.

Perceiving no "difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation" in the total context of the case, the Supreme Court affirmed the holding of the District Court and the Seventh Circuit Court of Appeals (454 F.2d 416) that Scarpelli was entitled to the writ of habeas corpus because administrative revocation of his probation without a hearing was a denial of due process, and remanded the case to the District Court to re-examine the failure of the Wisconsin Welfare Department to provide him with the assistance of counsel. In so holding, the Court relied upon *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), in which the Court considered revocation of the habeas petitioners' parole without a hearing because, upon their theory, they were thus deprived of their Fourteenth Amendment right to due process.

In *Gagnon* the Court summarized the pertinent holding of *Morrissey*:

> "Specifically, we held that a parolee is entitled to two hearings, one a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole and the other a somewhat more comprehensive hearing prior to the making of the final revocation decision.
>
>    \*     \*     \*     \*     \*     \*
>
> ". . . At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing. [*Morrissey v. Brewer, supra*], 408 U.S., at 487, 92 S.Ct. 2603. The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the 'mini-

mum requirements of due process' include very similar elements:

> '(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.' *Morrissey v. Brewer, supra* [408 U.S.], at 489, 92 S.Ct. at 2604."

Morrissey's parole was revoked, he said without any prior hearing, upon review of the parole officer's written report one week after he was arrested by that officer as a parole violator. The State asserted in its brief that the petitioners (Morrissey and Booher) were granted hearings by the Board of Parole shortly after they were returned to the penitentiary, on the basis of the parole officer's written reports of alleged parole violations, and that at their hearings both admitted those violations. The Court concluded:

> "In the peculiar posture of this case, given the absence of an adequate record, we conclude the ends of justice will be best served by remanding the case to the Court of Appeals for its return of the two consolidated cases to the District Court with directions to make findings on the procedures actually followed by the Parole Board in these two revocations. *If it is determined that petitioners admitted parole violations to the Parole Board, as [Iowa] contends, and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter.* If the proce-

dures followed by the Parole Board are found to meet the standards laid down in this opinion that, too, would dispose of the due process claims for these cases." (Emphasis supplied).

See T.C.A. §§ 40–3617 and 40–3618 and 40–3619, with respect to parole violations by prisoners released from the penitentiary on parole, preliminary hearings for such alleged violators before a hearing officer, and Board hearings on parole violations.

█ On the other hand, the Legislature of this State has vested the trial judge with sole authority and discretion to grant suspension of sentence and probation to all convicted misdemeanants and to those convicted of a felony for which the maximum punishment does not exceed confinement in the penitentiary for 10 years. T.C.A. §§ 40–2901—40–2904. The trial judge is also entrusted with the sole power to revoke suspension of sentences and probation. T.C.A. § 40–2906.

The procedure for revoking suspension of sentences and probation is provided in T.C.A. § 40–2907 as follows:

"Procedure to revoke suspension or probation.—Whenever it shall come to the attention of the trial judge that any defendant who has been released upon suspension of sentence has been guilty of any breach of the laws of this state or who has violated the conditions of his probation, the trial judge shall have the power in his discretion to cause to be issued under his hand a warrant for the arrest of such defendant as in any other criminal case. Said warrant may be executed by a probation and paroles officer or any peace officer of the county in which the probationer is found. Any probation and paroles officer for cause may arrest a probationer without a warrant. Whenever any person is arrested for the violation of probation and suspension of sentence, the trial judge granting such

probation and suspension of sentence, or his successor, shall, at the earliest practicable time, inquire into the charges and determine whether or not a violation has occurred and at such inquiry, the defendant must be present and shall be entitled to be represented by counsel and shall have the right to introduce testimony in his behalf thereon. The trial judge may enter such judgment upon the question of such charges as he may deem right and proper under the evidence adduced before him. If the trial judge should find that the defendant has violated the conditions of his probation and suspension, the trial judge shall have the right by order duly entered upon the minutes of his court, to revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40–2906, provided, however, that in case of such revocation of probation and suspension, the defendant shall have the right to appeal therefrom to the Supreme Court of this state as in other criminal cases."

█ In granting or suspending probation, the question is always whether or not the court is satisfied that its action will subserve the ends of justice and the best interests of both the public and the defendant, and such action rests in the court's sound discretion. *Hooper v. State,* 201 Tenn. 156, 297 S.W.2d 78.

█ Examination of all the foregoing statutes makes it clear that the Legislature intended to and did create two separate and distinct systems relating to the conditional release of persons convicted of crime, the one dealing with suspension of sentence and release on probation by the trial judge, and the other with release of prisoners from the penitentiary by the Board of Pardons and Paroles.

In the case before us the order of the trial judge suspending Practy's sentence

and placing him on probation contained, among other things, the following condition:

"He shall not violate any of the laws of the United States, or the State of Tennessee, or of any state where he may be, or any ordinance of any municipality, but he shall conduct himself as a law abiding citizen."

■ As already noted, by his plea Practy admitted his original guilty plea conviction of petit larceny and that the trial judge suspended his sentence and placed him on probation, and that when served with the revocation petition he was in the Shelby County jail serving a sentence of 11 months and 29 days "for a subsequent charge." Nor does the record show that he made any effort to question that subsequent conviction, or its effect on his previously granted sentence suspension and probation, when he appeared with his appointed attorney at his parole revocation hearing before the trial judge. Thus, since there is no question whatever about the validity of his subsequent guilty plea conviction of attempting to commit a felony, his admitted violation clearly constituted sufficient ground for revoking his suspended sentence and probation under the standards of this State and, as said by the United States Supreme Court in *Morrissey, supra,* that should "end the matter."

■ Moreover, we agree with the State that the procedural requirements delineated in *Morrissey* and recited in the above quotation from *Gagnon,* were substantially and adequately observed in the revocation of Practy's suspended sentence and probation. The revocation petition, which he admitted was factually correct and which was served on him, at once provided him with written notice of the claimed violation of his probation and disclosed the nature of the evidence against him; the hearing before the trial judge, where he was represented by counsel and had the right to testify and call witnesses and present evidence and to confront and cross-examine adverse witnesses, effectively preserved those rights designated (c), (d) and (e) by the Supreme Court as minimal requirements; and the order entered by the trial judge revoking Practy's earlier sentence suspension and probation furnished him essentially the information contemplated by (f) in the Court's list.

■ Beyond that, the probationer's rights are further protected by his right to have any adverse decision reviewed by this Court and the Supreme Court of Tennessee. Thus, the statutorily mandated proceedings in this State for revocation of a probationer's suspended sentence and probation unquestionably more than comply with the mere minimal requirements stated in *Morrissey* and *Gagnon* on which plaintiff in error Practy relies. In *Morrissey* the Court said termination of the conditional liberty of a parolee "calls for some orderly process, however informal." (92 S.Ct. 2601). This State's procedure for revocation of sentence suspension and probation is an orderly one affording a probationer full protection of his constitutional right to due process.

■ Finally, the argument that a preliminary hearing upon a charge of probation violation could be had in a General Sessions Court to determine probable cause, with an appeal therefrom to "another division of the Criminal Court other than that imposing the suspended sentence" is wholly untenable for the simple reason, as pointed out, that our probation-revocation statute confers no authority or power upon General Sessions Courts in such matters, and, instead vests the trial judge with exclusive jurisdiction in these cases.

Affirmed.

WALKER, P. J., and RUSSELL, J., concur.