IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1999 SESSION



FILED

August 13, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | No. 02C01-9802-CR-00041 |
| Appellee, | * | SHELBY COUNTY |
| VS. | * | Hon. Joseph B. Dailey, Judge |
| CLIFFORD W. JACKSON, | * | (Probation Revocation) |
| Appellant. | * | |

For Appellant:

Marvin E. Ballin, Esq.
Mark A. Mesler, Esq.
Ballin, Ballin & Fishman, P.C.
200 Jefferson Avenue, Suite 1250
Memphis, TN 38103

For Appellee:

John Knox Walkup
Attorney General and Reporter

J. Ross Dyer
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN 37243-0493

Lee V. Coffee
Assistant District Attorney General
Criminal Justice Center, Third Floor
201 Poplar Avenue
Memphis, TN 38103

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

## OPINION

The defendant, Clifford W. Jackson, pled guilty to unlawful possession of marijuana with the intent to sell or deliver, a Class D felony. The trial court imposed a Range I sentence of two years. The sentence was suspended and the defendant was granted a probationary term of three years. Approximately six months later, the trial court revoked probation.

In this appeal of right, the defendant presents the following issues for review:

(I)     whether lack of proper notice of probation revocation deprived the defendant of due process; and

(II)    whether the trial court erred by revoking probation based solely on the defendant's lack of candor.

We affirm the judgment of the trial court.

At the initial sentencing hearing, the defendant testified that he and his co-defendant, Terry Lewis, decided to visit friends at Kentucky State University. The defendant, who drove his vehicle, stated that he was aware that Lewis had packed "something" in the car but claimed that he did not learn the substance was marijuana until well into the trip. Lewis was driving when a Memphis police officer stopped them for speeding. When the officer noticed that the Lewis was nervous and did not make eye contact, he asked to search the vehicle. Lewis refused the officer's request but a trained police dog alerted the officer to the presence of illegal drugs. Subsequently, the officers discovered over twelve pounds of marijuana. At the sentencing hearing, the defendant testified that he was embarrassed about the incident, that he had used poor judgment, and that a felony conviction would be detrimental to his career in social work. On cross-examination, the defendant

2

denied telling the investigating officers that he and Lewis had purchased the marijuana for $500.00 per pound and planned to sell it in Kentucky for a profit. The defendant contended that he had not actually discussed with Lewis how much profit he might realize but had estimated some $2,000.00.

The defendant, a Texas resident, had attended Rice University on an athletic scholarship and, after graduating in 1993, had obtained work as a mental health, mental retardation aide for the State of Texas. He lived alone and supported himself. He admitted that he had been previously charged with credit card fraud but claimed that the charge had been dismissed.

Although the co-defendant Lewis failed to appear at the sentencing hearing, the trial court chose to sentence the defendant at that time:

> I have some real concerns with [the defendant's] testimony today. I don't think he's been as forthcoming with the truth as he could have been. When you were first questioning him he seemed to indicate ... that he had no idea what was in the car, when it got in there, where he was going, anything at all about this activity.
> And only during cross-examination did it slowly begin to come out that, well, yes, he did know what was in there, he did know it was marijuana, he did have some general idea of how much money he was going to make on it.
> ***
> But as far as actually admitting to participating in this enterprise, he did as much as he could to deny it. ... He denied everything. So he only admitted to as much as he had to given the factual circumstances under which he was arrested. So I'm not really impressed with his testimony today.
> ***
> I will, reluctantly and against my better judgment, but because of your employment, educational background, lack of criminal history, grant the request for probation....

In September 1997, the trial court conducted the sentencing hearing for Lewis. After Lewis testified, the proceedings were continued due to the trial

3

judge's concern over discrepancies in the testimony of the two men regarding the extent of the defendant's involvement in the offense. At that point, the attorney who had represented both the defendant and Lewis filed a motion to withdraw due to the likely conflict of interest. The trial court ordered the defendant and Lewis to appear for a second hearing, each with substitute counsel.

While the pleadings are not in the record, the state apparently filed a petition to revoke the defendant's suspended sentence. At the January 12, 1998, revocation hearing, Lewis testified that he and the defendant had each invested in six pounds of marijuana and had planned to sell it for a profit in Kentucky. Lewis claimed that he had personally obtained the marijuana from a woman in Texas. He stated that he acquired his share on credit and that the defendant paid roughly $2,000.00 for the other six pounds.

The defendant revealed that at his initial sentencing hearing he had tried to minimize his role in the offense and that some of his earlier testimony may have been misleading to the extent of his involvement. While conceding that he had not been entirely forthcoming as to the level of his participation, he nevertheless maintained that he had truthfully answered the questions asked of him. Upon further questioning by the trial judge, the defendant ultimately acknowledged that he had not been truthful about how the marijuana was obtained, when he became aware of its presence in his car, or what plans the two men had about selling it.

The trial court revoked probation, ruling as follows:

[T]here is no question that [the defendant] left the impression and intended to leave the impression that it was Mr. Lewis from start to finish ... and that it was all a big surprise to him.
      And it wasn't until Mr. Lewis came in a month later for his hearing and he testified as he did that the other

4

side of the coin was revealed....

***

... [H]e knew full well what was going on. He was in this venture as fully as Mr. Lewis was. And he was just unwilling ... to tell the truth with regard to his participation and what was going on.

And it is tragic because he has a good job, educated at ... one of the finest schools in the country, a lot of potential. But, doggone it, you've got to tell the truth. That's the bottom line and that's the first step....

It was apparent to me at the [initial sentencing hearing] that everyone ... was interested in finding out what the truth was. And he was dancing around it all day. And I expressed at that time real reservations about his honesty and his candor. But for all the other reasons I ... reluctantly put him on probation. But I'm sure not going to today. He's going to serve this ... two-year sentence at the penal farm.

I

The defendant contends that the trial court failed to follow the proper procedures in revoking his probation. In particular, he complains that the trial court failed to provide adequate notice and thus deprived the defendant of due process. See Practy v. State, 525 S.W.2d 677 (Tenn. Crim. App. 1974). The state asserts that the trial judge's order allowing the defendant's initial trial counsel to withdraw served as written notice to the defendant. While conceding that the trial court did not follow the procedure set forth in Tenn. Code Ann. § 40-35-311(a), the state contends that the defendant had adequate notice of the revocation hearing.

Following its ruling, the trial court addressed defense counsel regarding the adequacy of the notice:

> Trial Court: I will state this so that the record is clear if this does go up. ... Your client was on notice with regard to the purpose of this hearing.
> Counsel: Oh, I don't doubt that, Your Honor.
> ***
> Trial Court: [The defendant] made one or two appearances in Memphis after the September hearing involving the co-

5

defendant for purposes of allowing him to retain separate counsel. And it's been reset a couple of times until today. So that he has had ample time, I believe, to prepare for today's hearing. And certainly no request was made for additional time to prepare. ... I ordered copies of the transcripts of both hearings so that everyone had access to the transcripts to review for today. And no objection was ever lodged at any of the previous hearings or today with regard to the procedures that were being followed with regard to re-opening the issue of probation and the appropriateness of probation.

The statutes governing revocation procedures provide, in pertinent part, as follows:

Revocation of suspension of sentence.--The trial judge shall possess the power, at any time within the maximum time which was directed and ordered by the court for such suspension, after proceeding as provided in § 40-35-311, to revoke and annul such suspension....

Tenn. Code Ann. § 40-35-310.

Procedure to revoke suspension of sentence or probation.--(a) Whenever it comes to the attention of the trial judge that any defendant who has been released upon suspension of sentence, has been guilty of any breach of the laws of this state or has violated the conditions of probation, the trial judge shall have the power to cause to be issued under such trial judge's hand a warrant for the arrest of such defendant as in any other criminal case....

Tenn. Code Ann. § 40-35-311.

A defendant who is granted probation has a liberty interest and is entitled to due process before any revocation. Practy, 525 S.W.2d at 682. Certain procedural requirements must be met. See Gagnon v. Scarpelli, 411 U.S. 778 (1973); State v. Wade, 863 S.W.2d 406, 408 (Tenn. 1993). These include: (1) written notice of the claimed violation of probation; (2) disclosure to the probationer

6

of the evidence against him; (3) opportunity to be heard in person, to present witnesses, and to introduce documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a "neutral and detached" tribunal; and (6) a written statement by the finder of fact as to the evidence relied on and the reasons for revocation. Strict rules of evidence do not apply; reliable hearsay may be permitted. Practy, 525 S.W.2d at 680.

The defendant asserts that he was deprived of proper notice because the trial court failed to follow the procedures in Tenn. Code Ann. § 40-35-311(a). This court has ruled that actual notice satisfies the constitutional due process requirements for revocation of probation. State v. Peck, 719 S.W.2d 553, 556-57 (Tenn. Crim. App. 1986); State v. Carden, 653 S.W.2d 753, 754-55 (Tenn. Crim. App. 1983); Stamps v. State, 614 S.W.2d 71, 73-74 (Tenn. Crim. App. 1980). The record demonstrates that although no warrant was issued for the arrest of the defendant, he was aware that the hearing had been scheduled and that the grounds for the hearing arose from discrepancies between his testimony and that of co-defendant Lewis. Those discrepancies resulted in the withdrawal of defense counsel. Transcripts of their testimony were made available. In a written order provided to the defendant, the trial court permitted defense counsel to withdraw, required the defendant to appear, and advised him to retain new counsel. The defendant traveled to Tennessee on two occasions thereafter to secure counsel and attend proceedings. At the conclusion of the revocation hearing, defense counsel conceded that the defendant had understood the nature of the proceedings. From all of this, we must conclude that the notice provided, while not in accord with the procedures set forth in Tenn. Code Ann. § 40-35-311(a), was sufficient to satisfy any due process concerns.

7

II

Next, the defendant contends that the trial court did not have grounds to revoke his probation. The state, of course, takes a contrary position.

The trial court is authorized to revoke probation upon notice of any breach of the laws of the state. Tenn. Code Ann. § 40-35-311(a). Under this statute, the authority to revoke the suspended sentence arises when the trial court becomes aware of the defendant's criminal conduct. State v. Stubblefield, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997). A trial court may revoke probation on the basis of criminal acts that a defendant committed before being placed on probation if the trial court was unaware of the acts at the time the sentence was imposed. Id. A judgment of revocation cannot be disturbed unless the trial court abuses its discretionary authority. State v. Williamson, 619 S.W.2d 145, 147 (Tenn. Crim. App. 1981). Here, the trial court revoked probation because the defendant had provided untruthful testimony during the sentencing hearing and again at the revocation hearing. A false statement made under oath with intent to deceive constitutes perjury and is a breach of the laws of this state. Tenn. Code Ann. § 39-16-701. Although the defendant has not been charged with perjury, the law clearly requires a defendant to tell the truth at a sentencing hearing. While doubtful of the truthfulness of the defendant's testimony at the conclusion of the initial sentencing hearing, the trial court was uncertain that the testimony was false until the co-defendant Lewis testified some time later. When confronted, the defendant finally acknowledged his dishonesty. Thus, the trial court was warranted in revoking probation upon the determination that the defendant had committed a criminal act by testifying untruthfully.

The statute also authorizes revocation of a suspended sentence upon

8

a finding that a probationer violated a condition of probation. Tenn. Code Ann. § 40-35-311(a). Because conditions of probation are not established prior to its grant, due process principles would generally prevent a trial court from revoking a suspended sentence due to conduct constituting a violation of the conditions of probation which occurred prior to imposition of the sentence. See Stubblefield, 953 S.W.2d at 225.

> However, revoking probation based upon criminal acts a defendant committed before being placed on probation does not implicate these due process concerns because, unlike other conditions of probation that may be imposed, the defendant is deemed to have notice that his or her conduct must conform to the requirements of the law from the time of the law's enactment.

Id. In consequence, the trial court was also authorized to revoke the defendant's probation on the basis that he violated a condition of probation.

In our view, the defendant, by lying under oath to the trial court in an apparent attempt to receive a more lenient sentence, committed both a breach of the laws of this state and of the conditions of probation. The trial court did not determine conclusively that the defendant had been untruthful until hearing Lewis' testimony approximately one month after sentencing the defendant. In consequence, revocation of the suspended sentence was warranted.

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Presiding Judge

9

CONCUR:


_____
Joseph M. Tipton, Judge


_____
Thomas T. Woodall, Judge