IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 6, 2002

**STATE OF TENNESSEE v. OPAL GAUSE**

**Direct Appeal from the Circuit Court for Haywood County**
**Nos. 4504 and 4560     Clayburn L. Peeples, Judge**

_____

**No. W2002-01225-CCA-R3-CD - Filed November 14, 2002**

_____

Defendant, Opal Gause, entered a guilty plea to two counts of aggravated assault. The trial court sentenced Defendant to two consecutive three-year terms, for an effective sentence of six years. The sentences were suspended, and Defendant was placed on probation for the length of his original sentences. A violation warrant was subsequently issued alleging Defendant had failed to meet the conditions of his probation. Following a hearing, Defendant's probation was revoked, and he was ordered to serve his original sentence with credit for time served pre-trial. Defendant now challenges the revocation of his probation. Following a review of the record, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**.

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, and JOHN EVERETT WILLIAMS, JJ., joined.

Tom W. Crider, District Public Defender; and Joyce Diane Blount, Assistant Public Defender, Tenton, Tennessee, for the appellant, Opal Gause.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Garry G. Brown, District Attorney General; and Larry Hardister, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Background**

Three days after Defendant was placed on probation on March 1, 2001, he was arrested for public intoxication and sentenced to serve ten days. On March 16, 2001, Defendant was arrested again for harassment, but the charges were subsequently dismissed. In July, Defendant's probation officer filed a probation violation report alleging that Defendant was three months in arrears on

payment of his supervisory fees. Two months later, Defendant was arrested for assault, but these charges were also dismissed.

In September, Defendant's probation officer received a call from Defendant's sister concerning threats he had made to his mother, Hattie Gause. As a result, a board disciplinary meeting was held with Defendant on September 19. At this time, Defendant was instructed to move from his mother's house, and enroll in counseling at Pathways for mental health and substance abuse treatment. Defendant was also ordered to abstain from any further drug or alcohol use, and refrain from driving without a license. In addition, he was told to catch up on payment of his fees.

On October 10, 2001, Defendant was again arrested, this time for simple assault and public intoxication, found guilty and sentenced to eleven months, twenty-nine days, all suspended but thirty days. A second arrest for public intoxication occurred on October 13, 2001, resulting in another conviction and a thirty day sentence.

A second probation violation report was filed on November 9, 2001 alleging that Defendant had failed to (1) obey the laws, (2) follow his parole officer's rules of supervision, (3) abstain from excessive use of intoxicants, and (4) pay supervisory fees, all in direct violation of the terms of his probation. Based on Defendant's actions since his probation commenced, probation revocation was recommended.

At the revocation hearing, Defendant's probation officer testified that Defendant had not complied with any of the conditions of his probation other than checking in as required and reporting his arrests. Between the time Defendant was placed on probation and the filing of the second probation violation report, he had been arrested five times, and convicted on three of the charges.

Mr. Hughes, Defendant's counselor at Pathways, testified that he had known Defendant for approximately fifteen years. During that time, Defendant periodically attended counseling sessions for a few weeks, then disappeared for extended periods of times, often for years. After a meeting with Defendant on October 1, Mr. Hughes thought Defendant had a good chance at succeeding in the treatment program, and that he would benefit from Pathways' intensive outpatient counseling program. Mr. Hughes testified, however, that Defendant missed his next scheduled meeting because he was in jail.

Hattie Gause, Defendant's mother, testified that her son had never assaulted her, and he could come live with her if his probation were not revoked.

Defendant testified that he inadvertently paid his supervisory fees to the General Sessions Court instead of the Circuit Court, and did not discover his mistake until the disciplinary meeting. Defendant also denied that he had an alcohol problem. He claimed that his problems resulted instead from his bouts with depression and his temper. Defendant testified that he visited the Lighthouse Ministries in Memphis, Tennessee, to see what treatment programs were offered. However, the patients at the facility appeared to be mostly drug addicts and alcoholics and he "didn't

want to be around that." Defendant testified that he next tried to enroll in the rehabilitation program at Buffalo Valley, but the center would not take him because he was on medication for depression. Finally, Defendant stated that he returned to his former Pathways counselor, Calvin Hughes. Defendant said he attended one meeting in October, but missed the next scheduled visit because he was in jail at the time. Defendant testified that he would attend Pathways' outpatient counseling program in the future if his probation was not revoked.

Defendant admitted that he had been convicted three times since the commencement of his probation, but alleged at the hearing that the arrests either had no grounds or only insubstantial grounds. He did admit he had been drinking on one of the public intoxication charges, but maintained that he had not been drinking when the other arrest occurred. Defendant also testified that the police misunderstood the events leading up to his assault conviction. However, he did not appeal any of his convictions.

At the conclusion of the testimony, the trial court revoked Defendant's probation and ordered Defendant to serve his two consecutive sentences in the Tennessee Department of Correction with credit for time already spent in the county jail.

On appeal, Defendant claims that the trial court abused its discretion and violated his rights of due process when the trial court (1) revoked Defendant's probation without considering alternatives other than incarceration, (2) failed to state the reasons upon which it based its determination to revoke Defendant's probation, and (3) failed to allow Defendant's counsel to make a statement on his behalf before the trial court issued its ruling.

## II. Due Process Claims

Defendant alleges that the trial court abused its discretion and violated Defendant's due process rights when the court failed to make specific findings as to the basis for the revocation of probation, and failed to allow Defendant's counsel to make a statement on behalf of the Defendant before ruling on this matter.

A defendant who has been granted a suspended sentence and probation has a liberty interest, although conditional, that is protected by due process of law. *State v. Merriweather,* 34 S.W.3d 881, 884 (Tenn. Crim. App. 2000); *State v. Stubblefield,* 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997); *Practy v. State,* 525 S.W.2d 677, 680 (Tenn. Crim. App. 1974) *cert. denied* (Tenn. 1975). Therefore, the termination of the defendant's probation requires some form of orderly procedure. *Id.* at 482 *citing Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). While not afforded the full array of procedural protections attached to a criminal proceeding, a defendant facing revocation of probation is entitled to the following minimum due process requirements:

(a)     written notice of the claimed violations of [probation or] parole;
(b)     disclosure to the [probationer or] parolee of evidence against him;

(c)    opportunity to be heard in person and to present witnesses and documentary evidence;

(d)    the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

(e)    a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

(f)    a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.

*Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct.1756, 1761-1762, 36 L.Ed.2d 656 (1973) *citing Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604.

The hearing process envisioned in *Gagnon* provides the defendant with notice as to the violations alleged and the opportunity to present evidence and witnesses on disputed facts and insures that contested issues are resolved. *Morrissey*, 408 U.S. at 484, 92 S.Ct. at 2602. The process also assures the defendant that the trial court has before it sufficient facts upon which to make a conscientious and informed decision. *State v. Harkins,* 811 S.W.2d 79, 82 (Tenn. 1991).

Our state legislature has vested the trial judge with the sole authority to revoke a defendant's probation whenever the trial judge learns that a defendant has either (1) been guilty of the breach of any law or (2) violated the conditions of his probation. Tenn. Code Ann. § 40-35-311(a). Following a defendant's arrest for a violation of probation, the trial judge must inquire as to the charges and determine if a violation has occurred. Tenn. Code Ann. § 40-35-311(b). The defendant must be present at the inquiry, is entitled to representation by counsel, and may present testimony on his behalf. *Id.* If the trial judge determines that a violation has occurred by the preponderance of the evidence, he may revoke the defendant's probation and suspension of sentence and order the defendant to serve the judgment as originally entered. Tenn. Code Ann. § 40-35-311(c). The defendant has the right to appeal any revocation of probation. *Id.*

This Court has determined that the statutory procedures for the revocation of probation set forth in Tenn. Code Ann. § 40-35-311 comply with the minimum due process standards required for revocation hearings under *Gagnon. See Practy,* 525 S.W.2d at 682; *Merriweather*, 34 S.W.3d at 884. As part of this procedural framework, the trial court must issue a statement setting forth the evidence and factors relied upon in making the determination to revoke probation. *State v. Delp,* 614 S.W.2d 395, 397 (Tenn. Crim. App. 1980) *perm. to appeal denied* (Tenn. 1981). Although the trial court's findings may be written or oral, a statement in some form must be made. *Id.*

At the conclusion of Defendant's revocation hearing in this matter, the following dialog occurred:

MS. BLOUNT [defense counsel]:    That's all the proof we're going to present, Your Honor.

| | |
|---|---|
| THE COURT: | Any rebuttal, General? |
| GENERAL HARDISTER: | No, Your Honor. |
| THE COURT | Any comments? |
| GENERAL HARDISTER: | We'll submit the matter without a statement, Your Honor. |
| THE COURT: | Mr. Gause, your probation in each case is revoked. |

The trial court's order stated that Defendant's suspended sentence was revoked "for failure to abide by their [the State of Tennessee Department of Correction, Division of Probation] rules and regulations." Clearly, the transcript of the hearing and the trial court's order revoking the suspended sentence gave Defendant only scant notice of the evidence and factors relied upon by the trial judge in reaching his determination that revocation was proper. *Delp,* 614 S.W.2d at 397.

The trial court's written or oral findings are an integral and indispensable part of the hearing process when the revocation involves disputed facts and contested issues. *See Id.* However, Defendant's revocation was based, at least in part, on convictions by a court of competent jurisdiction. Although Defendant disputes some of the factors surrounding his arrests, he admits that he was charged and convicted for offenses committed while he was on probation. A revocation of probation can be based on only one violation, and, in this case, Defendant has admitted to at least three violations.

The trial judge has broad discretion in formulating the conditions of the defendant's probation, so that the punishment meets both the interests of society and the interests of the defendant. Tenn. Code Ann. § 40-35-303(9)(d); *State v. Burdin*, 924 S.W.2d 82, 85 (Tenn. 1996); *Practy*, 525 S.W.2d at 681. Therefore, these conditions must be clearly relayed to the defendant in order that he may have reasonable notice of the prohibited conduct and the opportunity to conform his actions to the restrictions placed against his liberty. *Stubblefield,* 953 S.W.2d at 225, *citing United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed.2d 989 (1954).

However, revoking a defendant's probation based on the commission of criminal offenses does not implicate the same due process requirements since the defendant, as a matter of law, "is deemed to have notice that his or her conduct must conform to the requirements of the law" the moment he or she is placed on probation. *Stubblefield,* 953 S.W.2d at 225; *State v. Stone*, 880 S.W.2d 746, 749 (Tenn. Crim. App. 1994). The commission of a crime alone justifies the issuance of a warrant for Defendant's arrest for violation of probation. Tenn. Code Ann.§ 40-35-311(a). When a defendant pleads guilty and is convicted of a crime while on probation, there are no disputed facts or contested issues that warrant due process protection. *Stone*, 880 S.W.2d at 749. *See Morrissey,* 408 U.S. at 490, 92 S.Ct. at 2605 ("If it is determined that petitioners admitted parole [probation] violations to the Parole Board, as respondents contend, and if those violations are found

to be reasonable grounds for revoking parole [probation] under state standards, that would end the matter.") Further, the record of a conviction does not depend on an evaluation of the credibility of witnesses which is best left to the trial court. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

Defendant's convictions constitute an independent basis for revocation of probation. *See* Tenn. Code Ann. § 40-35-311(a); *State v. Robinson,* 2000 WL 546209 (Tenn. Crim. App. 2000). Therefore, it is unnecessary to address the issues surrounding the other alleged probation violations. The only question that remains is whether the trial court abused its discretion when it revoked Defendant's probation on the basis of his convictions. This court has previously determined that a crime committed during probation constitutes substantial evidence that a violation of probation has occurred. *State v. Gabel*, 914 S.W.2d 562, 564 (Tenn. Crim. App. 1995); *see Stone*, 880 S.W.2d at 749 (Revocation was warranted even when the offenses were committed prior to the commencement of the defendant's probationary period); *Delp,* 614 S.W.2d at 398 (Revocation may be proper even when the defendant is later acquitted of the crime). Therefore, we conclude that the trial court did not abuse its discretion in revoking Defendant's probation. *Stubblefield*, 953 S.W.2d at 226; *see Harkins,* 811 S.W.2d at 82. We note, however, if the revocation in this matter did not include a charge that Defendant had breached the laws of this state, we might be compelled to reach a different result.

Defendant also alleges that the trial court violated his due process rights when his counsel was not permitted to make a statement on his behalf before the trial court issued its ruling. As a result, Defendant argues that he was denied the opportunity to ask for intensive probation as an alternative to incarceration.

The record does not clearly indicate that Defendant's counsel was prohibited from making a statement, especially since counsel did not notify the trial court of any desire to argue. The transcript merely shows that the trial judge asked for statements, the state replied negatively, and Defendant's counsel was silent.

A revocation hearing is not a criminal proceeding but rather an informal hearing which does not include "the full panoply of rights and procedural safeguards." *State v. Wade,* 863 S.W.2d 406, 407-408, (Tenn. 1993)*; State v. Milton*, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984); *Barker v. State,* 483 S.W.2d 586, 589 (Tenn. Crim. App. 1972), *cert. denied* (Tenn.1972); *Morrissey*, 408 U.S. at 480, 92 S.Ct. at 2600. The procedure under which revocation hearings are conducted is governed by statute, and, as noted above, the statutory framework fully protects the defendant's due process rights. Tenn. Code Ann. § 40-35-311; *Practy,* 525 S.W.2d at 682. During the revocation hearing, the defendant has the right to be present, the right to counsel, and the right to present testimony on his behalf. In this matter, Mr. Hughes, Defendant's counselor at Pathways, testified that he believed Defendant would benefit from an intensive outpatient alcohol abuse treatment program. Defendant's counsel then asked Defendant if he would be willing to go into this program if he were given another chance at probation, and Defendant answered affirmatively. Defendant, therefore, had sufficient opportunity during the hearing process to present evidence that he would be a suitable candidate for

alternative sentencing should the trial court revoke his probation. Defendant is not entitled to relief on this issue.

## III. Imposition of Sentencing

Defendant alleges that the trial court violated his due process rights when it ordered that the balance of his sentence be served in the Tennessee Department of Correction without considering whether Defendant was a suitable candidate for intensive probation. Defendant argued in the trial court that his participation in Pathway's outpatient substance abuse treatment program would result in his successful rehabilitation. Mr. Hughes also testified that he felt Defendant was at last committed to seeking help for his problem, and that a successful completion of the program would provide Defendant with the chance to remain sober.

Once a defendant's probation has been revoked, the trial judge is granted broad discretion in determining the defendant's sentence. *See* Tenn. Code Ann. §§ 40-35-311(e), 40-35-310, and 40-35-308(c). The trial court may order the defendant's incarceration, cause execution of the original judgment, or modify the defendant's probationary period, including extending the defendant's probation for no more than two years. *Id.*; *State v. Hunter*, 1 S.W.3d 643 (Tenn. 1999).

Defendant initially pled guilty to two counts of aggravated assault. In the nine months Defendant was on probation, he was arrested two times for assault, once for harassment and twice for public intoxication. The harassment charge and one of the assault charges were subsequently dismissed. Defendant pled guilty to the other charges, and served the sentences imposed by the court. Both Defendant's probation officer and his counselor at Pathways testified that Defendant had a problem with alcohol, and that alcohol was generally the root of his criminal offenses. Defendant, however, denied that he had an alcohol problem, admitting only that he "might drink a little bit too much." Defendant made one effort to inquire about the treatment program at Lighthouse Ministries, but he decided not to stay since the patients looked like drug and alcohol addicts, and he did not feel he was in the same category.

Defendant's counselor testified that he had counseled Defendant for approximately fifteen years. During that time, Defendant would come in for a few weeks, then disappear, sometimes for years. The counselor stated that it was his understanding that Defendant primarily came in for counseling when he was under pressure to do so by some court. The counselor saw Defendant in October and testified that he saw signs of a sincere desire for rehabilitation in Defendant. Defendant, however, missed the next scheduled meeting because he was in jail for public intoxication.

Based on a review of the record, it is apparent that Defendant has made little effort to assist in his rehabilitation. During his probation, Defendant continued to commit the same types of offenses that led to his initial convictions. He made some minimal effort to seek counseling during his probation, but over the past fifteen years has shown little progress in dealing with his problems. In fact, Defendant denied he even had a problem with alcohol abuse despite his counselor's guidance and recommendations. The repeated unsuccessful efforts towards rehabilitation indicate that

Defendant has little potential for success during another probationary period. Defendant urged the court not to interrupt his efforts at rehabilitation, yet the only indication that Defendant received counseling during his probation was one meeting in October with Mr. Hughes. Mr. Hughes testified he was optimistic after this session, but, during the two weeks following the meeting, Defendant was arrested once for simple assault and public intoxication and once for public intoxication. Defendant's actions give little assurance that an intensive probation will meet with any more success.

Given these facts, we cannot say that the trial court abused its discretion in ordering Defendant to serve his sentence in the Tennessee Department of Correction. Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE