IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 26, 2008

## STATE OF TENNESSEE v. MARCUS NIGEL DAVIS

**Direct Appeal from the Criminal Court for Knox County**
**No. 84932      Kenneth F. Irvine, Jr., Judge**

---

**No. E2007-02882-CCA-R3-CD - Filed October 23, 2008**

---

The defendant, Marcus Nigel Davis, appeals from the judgment of the Knox County Criminal Court, revoking his probation and reinstating his original sentence of six years. Following our review, we affirm the judgment of the court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MᴄLɪɴ, J., delivered the opinion of the court, in which Jᴏʜɴ Eᴠᴇʀᴇᴛᴛ Wɪʟʟɪᴀᴍs and Rᴏʙᴇʀᴛ W. Wᴇᴅᴇᴍᴇʏᴇʀ, JJ., joined.

Mark E. Stephens, District Public Defender and Christy Murray, Assistant Public Defender, Knoxville, Tennessee, for the appellant, Marcus Nigel Davis.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Phillip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In the instant case, the record reflects that the defendant was indicted on three counts of rape. However, pursuant to a plea agreement, the defendant was allowed to plead guilty to three counts of sexual battery, Class E felonies, on August 22, 2007. As a result, he was sentenced to six years with one year to be served in confinement and the remaining balance to be served on enhanced probation. Subsequently, on October 22, 2007, a probation violation warrant was issued alleging that the defendant violated the terms of his probation as follows: the defendant was arrested for domestic assault; the defendant failed to abide by his curfew; the defendant failed to abide by the electronic monitoring rules and regulations; and the defendant failed to abide by the Board of Probation and Parole Sex Offender Directives. Thereafter, a probation revocation hearing was held.

At the hearing, Bernice Phillips, the defendant's probation officer, testified that she began supervising the defendant in August of 2007. The defendant initially reported as instructed, but he was unemployed and was having difficulty finding housing. In October of 2007, the defendant went

to work at Kentucky Fried Chicken. Around the same time, Officer Phillips had the defendant electronically monitored, using a bracelet and PTU box with global position satellite (GPS) tracking capability. Officer Phillips stated that she explained to the defendant the rules and regulations regarding electronic monitoring, how to carry the GPS tracking bracelet and box, and how the defendant would be monitored.

Officer Phillips testified that on October 17, 2007, around 3:30 p.m., she received a call from the monitoring center in Nashville, indicating that the defendant had removed his tracking device. Officer Phillips was unable to reach the defendant by phone so she drove over to his house around 5:00 p.m. When she reached the defendant's house, she encountered the defendant sitting in a car with his wife. The defendant told her that he left the PTU box in the house. He then searched for the box in the car and in the house but could not find it. The defendant said he might have left the box in an area where he had been fishing. He then promised to find the box and bring it by the probation office later in the evening when he reported for his sex offender treatment class.

Officer Phillips testified that she returned to the probation office around 7:00 p.m. on October 17, 2007, whereupon, she learned that the defendant had failed to report for his sex offender treatment class. Officer Phillips recalled that she waited for about 20 minutes then drove back to the defendant's house, however, the defendant was not home. Later, around 11:30 p.m., Officer Phillips received a phone call from the defendant's wife, advising Officer Phillips that the police had been called. At 12:30 a.m., Officer Phillips drove back over to the defendant's house and he was not home. Officer Phillips explained that the defendant's absence was in violation of his 9:00 p.m. curfew. Officer Phillips said that she later learned that the defendant was arrested for domestic assault. Officer Phillips noted that the defendant never reported the arrest to her and she did not see the defendant again. Officer Phillips testified that the PTU box, worth $1,400, was never recovered.

On cross-examination, Officer Phillips explained that the defendant's GPS tracking device was comprised of two components: an ankle bracelet, which was not removable and a PTU box which fastened around the defendant's waist and was removable. Officer Phillips acknowledged that the defendant was homeless when he was first released on probation, but he found appropriate housing and employment within a few months. Officer Phillips further acknowledged that the defendant had faithfully reported and attended his treatment classes up until October 17, 2007. Officer Phillips recalled that the defendant had made one payment on his court costs while on probation between August and October.

At the conclusion of the revocation hearing, the court requested the defendant's presentence report in order to review the defendant's prior criminal history. At this time, the defense objected arguing that review of the defendant's criminal history was immaterial to the court's determination of whether or not the defendant violated his probation. The court overruled the objection stating, "I think it is appropriate for me to know some history and as much information as I can about [the defendant] in making this decision." After reviewing the report, the court revoked the defendant's probation and ordered him to serve his entire six-year sentence in confinement with credit for time already served. In so doing, the court stated the following:

As far as the allegation here today, the Court will find that Mr. Davis was in violation of the rules of his probation in that he . . . lost this PTU device, and they were unable to track him for a period of time. He also did miss curfew on the night of . . . October 17th and he missed class that night.

[Defense Counsel] correctly points out that he did a number of things that he was supposed to do, though. He did get appropriate housing. He did get a job. And he was attending all his classes and meeting with his probation officer, except the one he missed the night all this problem occurred.

Quite frankly, under different circumstances, I think that would carry a tremendous amount of weight. . . .

I disagree with [defense counsel] about the appropriateness of me looking at [Mr. Davis's] entire history and all the information that I have available. And although [defense counsel] is correct that there is some duplication in the prior history that's in the presentence report . . . even discounting the duplication, there are a number of convictions. There are felony convictions, there are misdemeanor convictions. It covers numerous pages. There are a lot of misdemeanor assault convictions. There are some felony drug cases.

The General has pointed out on a number of occasions [where] probation has been revoked in the past. That also caught my attention. . . . [I]t . . . shows a serious problem of complying with the terms of release in that situation.

. . . .

. . . [W]hile these are not the most serious violations, Mr. Davis, your history is part of what I have to consider. And you've been in the system. You know how the system works. It is your obligation to comply with all the conditions, and you failed to do that.

I am not going to consider the allegation of the domestic assault. It's just a charge. . . . That's not a factor in my consideration, but I do find several violations as far as that you did not comply with the conditions of your release. . . . [T]his is a sex offense. It's a very serious offense. Because of that, this system has been created so people can be tracked. . . .

And based on your failure to do that and your violation of curfew, not going to your class, I'm going to find you are in violation and revoke you and order that you serve this sentence.

So the record is clear, I have, as part of that consideration, place heavy emphasis on what I found in this report. The history I think is significant, both the

nature of the offenses that he's been convicted of in the past and his poor record of compliance with various terms of release.

I think the case does speak to the fact that this was split confinement. If it had been something that had been presented to me for a decision, I'm not sure that it would have been split confinement, I'm not sure that it would have been split confinement in the first place, based on Mr. Davis's history. He may well have qualified as something other than a Range I, Standard Offender . . . .

So considering all of this together, the Court finds, Mr. Davis, that you're in violation of your probation. You did not comply with it. That based on your violation, your history, and your inability in the past to comply with terms of release, you're going to be revoked and you be ordered to serve your sentence in the Tennessee Department of Correction.

## ANALYSIS

On appeal, the defendant contends that the trial court erred in considering his prior criminal history when revoking his probation and reinstating his original sentence. The defendant submits that the record shows that the trial court had knowledge of the defendant's prior criminal history before imposing the original sentence; therefore, the court should not have relied on the same history to punish the defendant and revoke his probation. In rebuttal, the state concedes that "a trial court should not revoke a defendant's probation based on prior criminal acts that were known to the court at the time it imposed the suspended sentence." However, the state submits that the trial court did not abuse its discretion because it did not solely rely on the defendant's criminal history in revoking his probation.

In Tennessee, the procedure for revocation of probation is covered in Tennessee Code Annotated section 40-35-311. The statute provides as follows:

Whenever it comes to the attention of the trial judge that any defendant, who has been released upon suspension of sentence, has been guilty of any breach of the laws of this State or has violated the conditions of probation, the trial judge shall have the power to cause to be issued under such trial judge's hand a warrant for the arrest of such defendant as in any other criminal case. Regardless of whether the defendant is on probation for a misdemeanor or a felony, or whether the warrant is issued by a general sessions court judge or the judge of a court of record, such warrant may be executed by a probation officer or any peace officer of the county in which the probationer is found.

Tenn. Code Ann. § 40-35-311(a).

The essential question facing the trial court in a probation revocation proceeding is whether the court's determination will subserve the ends of justice and the best interest of both the public and

-4-

the probationer. *See Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956). The decision to revoke probation lies in the sound discretion of the trial court. *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). The trial court may revoke probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his or her probation. *See* Tenn. Code Ann. §§ 40-35-310, 311(e); *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. *Harkins*, 811 S.W.2d at 82. If the trial court has exercised "conscientious judgment in making the decision rather than acting arbitrarily," then there is no abuse of discretion. *Leach*, 914 S.W.2d at 107. Discretion is abused only if the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred. *Harkins*, 811 S.W.2d at 82; *State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

Initially, we note that a trial court's reliance on a defendant's past criminal history in making a probation violation determination can be problematic. To begin, our sentencing statutes contemplate a rationale where the revocation of probation must be predicated upon a showing of conduct which occurs subsequent to the grant of probation. *See State v. Shannon Lee Beckner*, No. 923, 1991 WL 43545 at *4 (Tenn. Crim. App., at Knoxville, April 2, 1991). As expressed in our statutes, the aim of the sentencing court is to acquire and assess all the relevant information about the defendant including his character and criminal history prior to determining the appropriate sentence and the manner in which that sentence is to be satisfied. *See e.g.*, Tenn. Code Ann. § 40-35-103; -210. The court's sentencing determination should encompass the unfavorable information, as well as the favorable, and few things are as relevant as the defendant's prior criminal conduct. *See id.* Therefore, if a defendant's criminal conduct was known before probation was granted, there is a presumption that the defendant's criminal conduct was part of the earlier sentencing equation, and the criminal conduct should not be used for a subsequent revocation. Our decision in *State v. Shannon Lee Beckner* is of guidance on whether conduct occurring outside the probationary term can be considered in making probation violation determinations. The court noted the following:

> This Court has previously held that a suspended sentence, already imposed, *but not yet in effect*, may be revoked because of a defendant's *new* violation of the law. Likewise, it has held that prior criminal acts, committed between the time of the original offense and the date probation was granted, can result in revocation when *they were not revealed* to the trial court at the time of the probation hearing.

> However, if a trial court, with knowledge of the prior criminal act, chooses to grant probation, it should not be allowed to base a later revocation upon that criminal act. *See e.g., Swope v. Musser*, 223 Kan. 133, 573 P.2d 587 (1977). Under such circumstances, our probation and revocation statutes clearly contemplate that a probationer is entitled to retain his liberty as long as he or she abides by the conditions upon which the probation was granted, including obeying the laws of our state.

> Although trial courts maintain continuing jurisdiction over felony probationers, *see* T.C.A. §§ 40-35-212, -303 through -311, there is a finality that attaches to a trial

court's sentencing determination, which includes probation. For instance, a direct appeal as of right lies from such a determination in the same way one lies for other criminal cases. T.C.A. § 40-35-401(a) and -402(a); T.R.A.P. 3(b). Further, once probation is granted, a defendant has a liberty interest, which is protected by due process before revocation may occur, *Practy v. State*, 525 S.W.2d 677 (Tenn. Crim. App. 1974), and the trial court is, likewise, limited as to what conduct it can use to change the manner of the service of a sentence, including revocation, to one more onerous than that originally imposed. T.C.A. §§ 40-35-308(b) and -311.

*Beckner*, No. 923, 1991 WL 43545, at \*5 (internal footnotes omitted and emphasis added). Accordingly, it is not permissible for a court to revoke probation based on criminal acts known at the time the probation was originally granted. *See id. See also State v. Beard*, 189 S.W.3d 730, 737 (Tenn. Crim. App. 2005). Additionally, as a practical matter, probation is intended to serve as an opportunity for rehabilitation and operates as a deterrent to future antisocial conduct. Therefore, we fail to see the efficacy of revoking a defendant's probation based on known criminal conduct committed prior to being sentenced as such action defeats the rehabilitative purpose for which probation was initially granted. With that said, we now turn to address whether the court abused its discretion in revoking the defendant's probation.

In the instant case, the record contains substantial evidence to support the trial court's findings that the defendant violated the conditions of his probation by missing his curfew, not attending his sex offender treatment class, and losing his PTU device which thwarted the state's ability to monitor his movements. Furthermore, it is our view that the trial court did not revoke the defendant's probation on the basis of his past criminal conduct. Rather, the trial court reviewed the defendant's past criminal history in order to determine whether the beneficial aspects of probation were being served. The court took a totality of the circumstances approach in order to decide whether the defendant's probation violations merited incarceration or another opportunity for rehabilitation. After doing so, the court determined that the defendant was not amenable to continued probation. Accordingly, because the trial court need only exercise "conscientious judgment" in making its decision, we perceive no abuse of discretion by the court in revoking the defendant's probation and ordering him to serve his original six-year sentence in confinement with credit for time already served.

As an aside, the defendant argues that the trial court erred by ordering him to serve his original six year sentence in confinement upon revoking his probation. However, our sentencing statute clearly states as follows:

If the trial judge should find that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court, to revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . .

Tenn. Code Ann. § 40-35-311(e). The defendant is without relief on this issue.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE