IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 5, 2026 Session

## STATE OF TENNESSEE v. MICHELE LEE RIDGEWAY

**Appeal from the Circuit Court for Henry County**
**No. 16854    Bruce Irwin Griffey, Judge**

_____

## No. W2025-01052-CCA-R3-CD

_____

The Defendant, Michele Lee Ridgeway, pled guilty to two counts of the sale of more than 0.5 grams of methamphetamine. The trial court imposed an effective sentence of eight years suspended to supervised probation. Thereafter, the Defendant allegedly violated the terms of her probation by possessing drug paraphernalia in her residence. Following a revocation hearing, the trial court fully revoked the Defendant's suspended sentences and ordered her to serve the remainder of her sentences in confinement. On appeal, the Defendant raises two issues: (1) whether the State proved that she violated the conditions of her suspended sentences; and (2) whether the trial court abused its discretion in fully revoking her probation as a consequence of the alleged violation. Upon our review, we conclude that the State did not prove that the Defendant violated the terms of her probation. Because we resolve the appeal on that basis, we do not reach the second issue. Accordingly, we respectfully reverse and vacate the revocation order and remand the case for dismissal of the revocation proceedings.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Reversed and Vacated; Case Remanded**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which J. ROSS DYER and JOHN W. CAMPBELL, SR., JJ., joined.

Mitchell A. Raines, Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference (on appeal); Robert "Tas" Gardner, District Public Defender; Kaylee N. Houston, Assistant District Public Defender (at hearings), for the appellant, Michele Lee Ridgeway.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin L. Barker, Assistant Attorney General; J. Neil Thompson, District Attorney General; and Marcus P. Murdaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

Relevant to this appeal, the Defendant pled guilty in November 2022 to two counts of the sale of more than 0.5 grams of methamphetamine. The trial court imposed an effective sentence of eight years, suspended to supervised probation. The sentences were ordered to run consecutively to a prior Carroll County sentence the Defendant was then serving.

In February 2025, the trial court issued a probation warrant. The warrant alleged that the Defendant was arrested for possession of drug paraphernalia on October 22, 2024. It further alleged that the Defendant had not paid any of her fines and court costs totaling $5,785, nor had she paid toward her supervision fees totaling $900. The trial court convened a revocation hearing on June 18, 2025.

### A. PROBATION REVOCATION HEARING

Paris Police Department Officer Hunter Lee testified that he and another officer responded to the Defendant's residence on October 22, 2024, to investigate an assault and theft unrelated to the Defendant. With the Defendant's consent, Officer Lee searched her bedroom and observed a clear glass pipe on a glass plate next to her bed. Officer Lee testified that the pipe was "definitely paraphernalia" and, based on his training and experience, that it was used for "possibly, meth or—or smoking some sort of, uh, drug, at some—of some sort." He did not testify to finding any residue on the pipe, any controlled substances in the residence, or any other items associated with drug use.

The Defendant denied owning the glass pipe. She stated that she was a heavy sleeper and did not know when the pipe had been placed in her bedroom. Another person present in the residence claimed ownership of the paraphernalia. However, when asked to

describe the item, the other person identified a different pipe than the one Officer Lee found in the Defendant's bedroom.

Officers charged the Defendant with possession of drug paraphernalia and arrested her. After taking the Defendant into custody, officers administered a drug screen, which returned negative.

At the revocation hearing, two probation officers testified about the Defendant's conduct while on supervision. The Defendant's former probation officer, Michelle Wade, filed the violation warrant alleging two violations: the Defendant's arrest for possession of drug paraphernalia and her failure to make payments toward her fines and court costs. On cross-examination, Ms. Wade confirmed that the Defendant had been making payments toward her Carroll County court costs while that sentence was active. Because the two sentences ran consecutively, she and the Defendant had discussed that the Carroll County obligation—the first-in-time sentence—should be paid off before payments began in the present case. She also acknowledged that the Defendant had several more years remaining to satisfy her balances in the present case.

Regarding the Defendant's supervision conduct, Ms. Wade testified that the Defendant had been subject to random drug screens since 2022 and had not tested positive for substance use. She said that the Defendant also reported to the office as required, made herself available for home visits, maintained stable housing, and provided proof of employment. After the Defendant's arrest on October 22, 2024, Ms. Wade administered a drug screen at the jail, which returned negative for substance use. Ms. Wade acknowledged that the Defendant had fulfilled all other conditions of her supervision and TDOC requirements during the period she supervised the Defendant.

The Defendant's current probation officer, Clarence Sparks, testified that he began supervising the Defendant approximately one to two months before the hearing and had encountered no issues with her. Mr. Sparks conducted a home visit and confirmed that the Defendant had stable housing and was compliant with her reporting requirements. He had not yet drug-screened the Defendant during his supervisory period. The day before the hearing, Mr. Sparks and the Defendant met to discuss her fines and court costs. He was satisfied with the payment plan they discussed, and he confirmed that the Defendant had recently found employment at approximately fifteen dollars per hour and also held a secondary job.

The Defendant's counsel asked the trial court to consider alternatives to full revocation. She highlighted her continued compliance with probation conditions and the absence of any positive drug screens during her time on supervision. The State responded by requesting full revocation, emphasizing the drug paraphernalia found in the Defendant's bedroom and her failure to make any payments in the case.[1]

## B.    THE TRIAL COURT'S ANNOUNCEMENT

In announcing its ruling, the trial court first found that the Defendant had violated her probation based on Officer Lee's testimony that she possessed drug paraphernalia. The trial court noted that the bedroom contained the glass pipe and a glass plate that "drugs could be placed upon and then ingested into the body." The trial court made no finding on the record regarding the Defendant's intent to use the paraphernalia.

In addressing the consequence of the violation, the trial court noted the Defendant's two prior felony convictions. These included a Carroll County conviction for which a probation violation had been dismissed as part of the present case's plea agreement. The trial court further observed that the Defendant had paid a substantial portion of her court costs in the Carroll County case but had not paid $3,500 in restitution to the victims. It also found that the Defendant had made no effort to pay court costs in the Henry County case despite being "gainfully employed." The trial court concluded that anything other than full revocation would undermine "the seriousness of the offense, the seriousness of being on probation, the seriousness of following the [c]ourt's order[,] and complying with probation."

The trial court entered the written revocation order on June 18, 2025. The Defendant filed a timely notice of appeal twenty-eight days later. *See* Tenn. R. App. P. 4(a).

## ANALYSIS

In this appeal, the Defendant argues that the State failed to prove she violated the conditions of her probation through new criminal conduct and that the trial court failed to

---

[1]    Before closing arguments, the trial court took judicial notice of a general sessions court judgment reflecting that the possession of drug paraphernalia charge had been dismissed.

make sufficient findings on the record to justify full revocation. She specifically argues that the State failed to prove, by a preponderance of the evidence, that she possessed the glass pipe with the intent to use it for an illicit purpose. She further contends that the trial court made no finding of intent. She argues that even if it had, the record contains no substantial evidence to support that finding. She points to the absence of drug residue on the pipe, the absence of any controlled substance in the residence, and her negative drug screen on the day of her arrest.

The State responds that it proved the Defendant violated the conditions of her probation through new criminal conduct by a preponderance of the evidence and that the trial court acted within its discretion in fully revoking the Defendant's suspended sentences. More specifically, the State contends that Officer Lee's testimony—that the pipe was "definitely paraphernalia" used for smoking drugs and that it was found next to the Defendant's bed—was sufficient to support an inference of intent by a preponderance of the evidence. We agree with the Defendant.

## A.     THE PROBATION REVOCATION FRAMEWORK

When a trial court imposes a sentence for criminal conduct, it may suspend the sentence for an eligible defendant and place that defendant on probation. *See* Tenn. Code Ann. §§ 40-35-103; -303(b) (2025). The trial court may also require the defendant to comply with conditions of probation that are reasonably suited to facilitate rehabilitation or protect the safety of the community. *See State v. Noel*, 729 S.W.3d 315, 322 (Tenn. Crim. App. 2025); *State v. Holmes*, No. M2020-01539-CCA-R3-CD, 2022 WL 2254422, at *16 (Tenn. Crim. App. June 23, 2022) ("The primary purpose of [a] probation sentence, however, 'is [the] rehabilitation of the defendant,' . . . and the conditions of probation must be suited to this purpose." (quoting *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996))), *no perm. app. filed*; *see also* Tenn. Code Ann. § 40-28-302(1) (2025).

So long as a defendant complies with the conditions of probation, the suspended sentence remains in effect until it expires. *See State v. Rand*, 696 S.W.3d 98, 106 (Tenn. Crim. App. 2024). If a defendant violates a condition of probation, however, the trial court may address the violation as it "may deem right and proper under the evidence," subject to statutory restrictions. Tenn. Code Ann. § 40-35-311(d)(1) (2025); *State v. Otten*, 721 S.W.3d 14, 18 (Tenn. Crim. App. 2025) ("A trial court is authorized to revoke a suspended sentence upon finding that the defendant violated the conditions of the sentence by a

preponderance of the evidence."). As our supreme court explained in *Dagnan*, probation revocation is a two-step process involving "two distinct discretionary decisions." *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022). First, the court must determine whether the defendant has violated a condition of probation. Second, if a violation is found, the court must determine the appropriate consequence for that violation. *Id.*; *Noel*, 729 S.W.3d at 322.

A trial court may not find a violation of a probation condition unless the record establishes that violation by a preponderance of the evidence. *See* Tenn. Code Ann. § 40-35-311(d)(1); *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005). We review a trial court's violation determination for an abuse of discretion. *Dagnan*, 641 S.W.3d at 759. To establish an abuse of discretion in this context, a defendant must show that "the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *Noel*, 729 S.W.3d at 322 (quoting *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)); *State v. Stack*, 682 S.W.3d 866, 871 (Tenn. Crim. App. 2023).

## B. REVOCATION BASED ON NEW CRIMINAL CONDUCT

The circumstances that can trigger the revocation process are specified in Tennessee Code Annotated section 40-35-311(a):

> Whenever it shall come to the attention of the trial judge that any defendant who has been released upon suspension of sentence has been *guilty of any breach of the laws of this state* or who has violated the conditions of his probation, the trial judge shall have the power to cause to be issued under his hand a warrant for the arrest of such defendant as in any other criminal case[.]

(emphasis added). Pursuant to this section, we have recognized that compliance with our state laws is an automatic condition of a suspended sentence. *State v. Stubblefield*, 953 S.W.2d 223, 224-25 (Tenn. Crim. App. 1997). Thus, "when a trial court learns that a defendant has violated the law, it has the power to initiate revocation proceedings." *Id.* Indeed, "an obligation not to commit a criminal violation is so inherently and patently a requirement of our citizens that it attaches to any grant of probation," and probationers, "whether they be present or future, are put on notice, as a matter of law, that further criminal

acts may result in revocation." *State v. Stone*, 880 S.W.2d 746, 749 (Tenn. Crim. App. 1994).

When the alleged violation consists of new criminal conduct, the State must present sufficient facts at the revocation hearing to enable the trial court to "make a conscientious and intelligent judgment as to whether the conduct in question violated the law." *Harkins*, 811 S.W.2d at 83 n.3. As we have recognized, "[i]n order to establish a violation of a suspended sentence based on the commission of a new offense, the State must offer proof by a preponderance of the evidence showing that a defendant violated the law." *State v. Waite*, No. E2019-02017-CCA-R3-CD, 2021 WL 71803, at *3 (Tenn. Crim. App. Jan. 8, 2021), *perm. app. denied* (Tenn. Mar. 25, 2022).

The State can make this showing in a variety of ways. For example, it may rely upon a defendant's admission of criminal conduct. *See, e.g.*, *State v. Evans*, No. E2024-00392-CCA-R3-CD, 2025 WL 354637, at *3 (Tenn. Crim. App. Jan. 31, 2025), *no perm. app. filed*. It may also rely upon a defendant's conviction for the offenses that are the basis for the revocation. *See, e.g.*, *Stubblefield*, 953 S.W.2d at 226; *Practy v. State*, 525 S.W.2d 677, 682 (Tenn. Crim. App. 1974). Even in the absence of an admission by the defendant or a conviction, the State may introduce independent proof establishing the elements of the alleged offense by a preponderance of the evidence. *See, e.g.*, *State v. Waite*, No. E2019-02017-CCA-R3-CD, 2021 WL 71803 (Tenn. Crim. App. Jan. 8, 2021), *perm. app. denied* (Tenn. Mar. 25, 2022).

Where the State proceeds under this third method, it may establish the new criminal conduct by producing "evidence in the usual form of testimony." *State v. Austin*, No. W2005-02592-CCA-R3-CD, 2006 WL 4555240, at *2 (Tenn. Crim. App. Aug. 9, 2006), *no perm. app. filed*. This testimony may come from the arresting officer, the alleged victim, or other witnesses. *See, e.g.*, *State v. Eaker*, No. M2013-01639-CCA-R3-CD, 2014 WL 546348, at *5 (Tenn. Crim. App. Feb. 11, 2014) (officer's testimony), *no perm. app. filed*; *State v. Chandler*, No. E2020-01409-CCA-R3-CD, 2021 WL 5119167, at *3 (Tenn. Crim. App. Nov. 4, 2021) (victim's testimony), *no perm. app. filed*. The State may also present circumstantial evidence that the defendant committed the alleged crime. *See State v. Herring*, No. E2018-00972-CCA-R3-CD, 2019 WL 1531229, at *3 (Tenn. Crim. App. Apr. 9, 2019), *no perm. app. filed*.

Nevertheless, the State's proof must establish the elements of the alleged crime by a preponderance of the evidence. Otherwise, the court cannot make a conscientious and intelligent judgment as to whether the conduct in question violated the law. *See, e.g.*, *State v. Farrar*, 355 S.W.3d 582, 589 (Tenn. Crim. App. 2011) (concluding that the proof did not establish a violation based on the offense of public intoxication when a preponderance of the evidence did not establish the element of endangerment or annoyance); *State v. Kendrick*, 178 S.W.3d 734, 739 (Tenn. Crim. App. 2005) (concluding that the proof did not establish a violation when "the State has not proven the elements required under Tennessee Code Annotated section 66-11-138 which makes misapplication of contract funds a crime").

## C.    INTENT TO USE DRUG PARAPHERNALIA

In this case, the trial court found that the Defendant violated the terms of her suspended sentences by unlawfully possessing drug paraphernalia. To review these findings, we begin by identifying the elements the State was required to prove. Tennessee Code Annotated section 39-17-425 defines the offense of possession of drug paraphernalia, and it provides in relevant part as follows:

> it is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance or controlled substance analogue in violation of this part.

Tenn. Code Ann. § 39-17-425(a)(1) (2025). Thus, to establish a violation of this statute, the State must prove three elements: "(1) that the defendant possessed an object; (2) that the object possessed was classifiable as drug paraphernalia; and (3) that the defendant intended to use that object for at least one of the illicit purposes enumerated in the statute." *State v. Ross*, 49 S.W.3d 833, 846 (Tenn. 2001) (citing *State v. Mallard*, 40 S.W.3d 473, 486 (Tenn. 2001)).

The Defendant does not dispute that she constructively possessed the pipe or that the pipe could be classifiable as drug paraphernalia. *Cf. State v. Ostein*, 293 S.W.3d 519, 530 (Tenn. 2009). She disputes only that she intended to use the pipe for any prohibited

purpose. Where a statute requires proof of intent, that intent may be established by both direct and circumstantial evidence. *State v. Lyons*, 669 S.W.3d 775, 787 (Tenn. 2023) (citation modified). Intent may generally "be inferred from the character and nature of the act or from all the circumstances of the case in evidence." *Id.* (citation modified).

To measure whether the State's proof of intent was sufficient in this case, we look to the circumstances our prior decisions have recognized as supporting that inference:

- the defendant's admission as to the object's intended use, *State v. Welch*, No. M2015-00361-CCA-R3-CD, 2016 WL 5944999, at *15 (Tenn. Crim. App. Oct. 13, 2016), *no perm. app. filed*; *State v. Thompson*, No. W2012-00642-CCA-R3-CD, 2013 WL 3776985, at *11 (Tenn. Crim. App. July 15, 2013), *perm. app. denied* (Tenn. Nov. 13, 2013);

- evidence that the defendant actually used the object for an illicit purpose, *State v. King*, No. M2017-01594-CCA-R3-CD, 2018 WL 4382074, at *3 (Tenn. Crim. App. Sept. 14, 2018), *no perm. app. filed*; *State v. Lawrence*, No. M2000-00493-CCA-R3-CD, 2000 WL 1880614, at *7 (Tenn. Crim. App. Dec. 29, 2000), *no perm. app. filed*;

- the object's proximity to controlled substances, *see, e.g.*, *Ross*, 49 S.W.3d at 846; *State v. Roach*, No. W2024-00036-CCA-R3-CD, 2025 WL 560737, at *5 (Tenn. Crim. App. Feb. 20, 2025) (recognizing that "an object's proximity to an illegal substance [is] indicative of its purpose and intended use"), *no perm. app. filed*;

- the presence of other items necessary to use the object for substance use, such as a lighter, *see State v. Clark*, No. W2012-02507-CCA-R3-CD, 2014 WL 287613, at *4 (Tenn. Crim. App. Jan. 24, 2014), *no perm. app. filed*;

- the presence of drug residue or other evidence consistent with use of the object for introducing controlled substances into the body, *State v. Rickman*, No. W2008-02012-CCA-R3-CD, 2009 WL 3719458, at *4 (Tenn. Crim. App. Nov. 5, 2009), *no perm. app. filed*; *Lawrence*, 2000 WL 1880614, at *7; and

- evidence that the defendant had recently used controlled substances, *State v. Wilson*, No. E2013-00371-CCA-R3-CD, 2014 WL 3817074, at \*14 (Tenn. Crim. App. Aug. 4, 2014), *no perm. app. filed*.

In this case, the trial court found that the Defendant possessed the pipe and that the pipe could be classified as drug paraphernalia. The trial court made no specific finding as to the Defendant's intent and did not reference that element of the offense. Nevertheless, because the Defendant neither admitted the conduct nor was convicted of the offense, the State was required to establish each element of the offense by independent proof by a preponderance of the evidence. Even assuming the trial court implicitly found that the Defendant intended to use the pipe, the record contains no substantial evidence to support that finding.

Upon receiving consent to search the Defendant's bedroom, Officer Lee observed a glass pipe resting on a glass plate next to the Defendant's bed. Based on his training and experience, he identified the pipe as "definitely paraphernalia" that could be used for "possibly, meth or—or smoking some sort of, uh, drug, at some—of some sort." An officer may rely on training and experience to identify an object as drug paraphernalia, and that testimony may help establish a defendant's intent when the record also contains other corroborating circumstances. *See, e.g.*, *Roach*, 2025 WL 560737, at \*5. But Officer Lee's testimony here did no more than identify the object's category—paraphernalia capable of smoking a drug.

Looking, therefore, to other corroborating circumstances of intent, we note that the record contains none. The pipe contained no residue and showed no other evidence of prior use. Officers found no controlled substances on the Defendant's person, near the pipe, or anywhere else in the residence. No testimony addressed the presence of a lighter, matches, or any other item necessary to use the pipe to ingest a controlled substance. No witness testified to having seen the Defendant use the pipe or any other object for an illicit purpose. No witness testified that the Defendant made any admission or statement about the pipe or its intended use—before, during, or after her arrest. The State offered no direct or circumstantial evidence tying the pipe to any actual or intended drug use by this Defendant.

Moreover, the affirmative evidence in the record cuts further against any inference of intent. Within hours of her arrest on October 22, 2024, the Defendant submitted to a drug screen at the Henry County Jail, and the result was negative. This was not an isolated

- 10 -

event. Ms. Wade testified that the Defendant had been subject to random drug screens since 2022 and had never tested positive for substance use. Ms. Wade's violation report confirms the same: the Defendant completed a long-term drug treatment program in June 2023 and had maintained her employment and passed all drug screens. The record contains no evidence that the Defendant sought, possessed, or used any controlled substance at any point during her supervision.

This evidentiary picture, measured against the framework established by our prior decisions, is stark. Each recognized circumstance that serves as an evidentiary bridge between an object's presence and a defendant's intent to use it—an admission, evidence of actual use, proximity to controlled substances, the presence of necessary accessories, drug residue, or evidence of recent drug use—is entirely absent. Officer Lee's testimony established only that the Defendant possessed an object classifiable as drug paraphernalia. Without any corroborating circumstance connecting the pipe to this Defendant's intent, the record contains no substantial evidence to support the trial court's implicit finding of intent.

Pushing against this conclusion, the State argues that the trial court could infer the Defendant's intent to use the object for an illicit purpose from Officer Lee's testimony that the pipe was "definitely paraphernalia" and was found near the Defendant's bed. We respectfully disagree for two reasons.

First, the "power to define criminal offenses and assess punishments for crimes is vested in the legislature," and this court may not "substitute its own policy judgments for those of the legislature." *State v. Gentry*, 538 S.W.3d 413, 420 (Tenn. 2017); *State v. Morgan*, 727 S.W.3d 182, 193 (Tenn. Crim. App. 2025). Adopting the State's argument would effectively read the intent element out of the statute. It would transform mere possession of an object classifiable as drug paraphernalia into per se proof of intent to use it for an illicit purpose.

That result cannot be correct. "We consider the whole text of a statute and interpret each word so that no part will be inoperative, superfluous, void or insignificant." *State v. DeBerry*, 651 S.W.3d 918, 925 (Tenn. 2022) (citation and internal quotation marks omitted). If possession of drug paraphernalia alone established an intent to use, the intent element would be superfluous. To accept the State's reasoning, therefore, would be to rewrite the statute rather than apply it. *State v. Hancock*, 678 S.W.3d 226, 240 (Tenn. Crim.

App. 2023) ("[T]he judiciary is not tasked with defining what shall constitute a criminal offense." (citation and internal quotation marks omitted)).

Second, our supreme court has confirmed that possession alone does not satisfy the intent element. In *State v. Mallard*, the court discussed the elements of this crime in connection with the comments to the Model Drug Paraphernalia Act, which is identical to section 39-17-425(a)(1). *Mallard*, 40 S.W.3d at 486. Those comments make clear that the statute "does not make the mere possession of an object capable of use as drug paraphernalia a crime. . . . It is the possession of drug paraphernalia *accompanied by an intent to use it*" that violates the law. *Id*. at 486 n.12 (emphasis added). The supreme court has confirmed that possession of an object classifiable as drug paraphernalia, without an accompanying intent to use it for an illicit purpose, does not constitute a crime under our statute. As such, the Defendant's possession of the pipe, standing alone, is insufficient to establish a violation.

Consequently, on the record before us, the State failed to offer proof by a preponderance of the evidence showing that the Defendant violated the law. Because the record contains no substantial evidence to support the conclusion that the Defendant committed the alleged crime, we conclude that the Defendant's suspended sentences could not be revoked on this basis. *Harkins*, 811 S.W.2d at 82; *Stack*, 682 S.W.3d at 871.

### D. ALLEGED FAILURE TO MAKE PAYMENTS FOR FINES, COURT COSTS, AND FEES

We also address whether the revocation order rests on a separate finding that the Defendant violated her probation by failing to pay fines, court costs, and fees. The Defendant argues that the State failed to prove her nonpayment was willful. The State responds that the Defendant's employment, coupled with her nonpayment, was sufficient to support an inference of willfulness.

We agree with the Defendant, and our review identifies three independent grounds for rejecting revocation on this basis. First, the record does not indicate that the trial court found a violation on this ground. Second, even if the record established a violation, it would not support a conclusion of willful nonpayment. Third, and independently sufficient, nonpayment would constitute only a first instance of a technical violation of a felony suspended sentence, which the statute bars from being subject to revocation

proceedings. *See* Tenn. Code Ann. § 40-35-311(d)(2); *Noel*, 729 S.W.3d at 322-23. We address each of these grounds in turn.

### 1.    Absence of a Violation Finding

The record does not support a finding that the trial court found the Defendant violated her probation through nonpayment of fines, court costs, and fees. In announcing its ruling, the trial court expressly applied the two-step framework from *Dagnan* and identified step one as whether a violation had occurred. It answered that question solely by reference to Officer Lee's testimony about the drug paraphernalia—finding, by a preponderance of the evidence, "that [the Defendant] was, in fact, in possession of drug paraphernalia." Having announced that finding, the court declared that "there has been a violation" and moved immediately to step two: the appropriate disposition. Only in that context—the consequence determination—did the court discuss the Defendant's nonpayment and employment status. The written revocation order does not identify the nature of the violations found. We, therefore, read the record as reflecting a single violation finding grounded solely in the drug paraphernalia charge.

### 2.    Absence of Evidence Supporting Willful Nonpayment

Even if the Defendant failed to pay fines, fees, and costs, the record would not support a conclusion that she willfully refused to do so. The United States Supreme Court has held that if a state "determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." *Bearden v. Georgia*, 461 U.S. 660, 667-68 (1983). Aligning with these principles, our supreme court has held that a defendant's probation is subject to revocation for nonpayment only if the trial court determines that the defendant willfully refused to pay or failed to make a bona fide effort to obtain the resources to pay. *See State v. Dye*, 715 S.W.2d 36, 40-41 (Tenn. 1986).

In this case, the Defendant had been making payments toward the court costs in her Carroll County case under her probation officer's direction. Ms. Wade testified that she advised the Defendant to pay her Carroll County obligations first, as that sentence came first in time, and that the Defendant had "several more years to pay on her balances." Moreover, by the time of the revocation hearing, she had also met with her current probation officer, Mr. Sparks, and developed a payment plan that Mr. Sparks described as

- 13 -

satisfactory. These facts support an inference that the Defendant was actively managing competing obligations under the guidance of her supervisory officers, not that she had willfully refused to pay outstanding obligations.

Moreover, the record does not contain substantial evidence supporting a finding that the Defendant had the ability to pay. Although the trial court found that the Defendant was "gainfully employed," that finding alone would not establish her ability to pay all of her obligations. The record reflects that the Defendant earned approximately fifteen dollars per hour and held a secondary job. But it contains no evidence of how long she had been employed in that position, what hours she worked, or what other financial obligations she had. Without that foundation, the fact of recent employment alone does not establish that the Defendant had the present ability to pay more than $6,600 in fines, costs, and supervision fees—or that she willfully refused to do so. As such, even if the trial court had found a violation on this basis, we conclude that the record would not support a conclusion that the Defendant willfully refused to pay her financial obligations.

### 3.      First Instance of a Technical Violation

Finally, even assuming that the record supported a finding of willful nonpayment, the trial court could not have fully revoked the Defendant's suspended felony sentences on this basis. In July 2021, the General Assembly amended the probation statutes to create a graduated system of sanctions for violations. The legislation established two categories—technical and non-technical violations—and assigned different potential consequences to each. *See* 2021 Tenn. Pub. Acts, ch. 409, §§ 24, 25 (eff. July 1, 2021); *Otten*, 721 S.W.3d at 20-21. Under this system, a trial court "shall not revoke" a suspended felony sentence "based upon one (1) instance of technical violation or violations." Tenn. Code Ann. § 40-35-311(d)(2).

A "technical violation" is defined as "an act that violates the terms or conditions of probation but does not constitute a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, absconding, or contacting the defendant's victim in violation of a condition of probation." Tenn. Code Ann. § 40-35-311(g). Nonpayment of fines, court costs, and supervision fees does not fall within any of the excluded categories. As such, this alleged violation is a technical violation under the statute.

- 14 -

In this case, the record reveals that the Defendant had not previously violated the conditions of her suspended sentences. According to Ms. Wade, this was the Defendant's first violation in this case. The Defendant had never tested positive for substance use, and she had fulfilled all other conditions of her supervision, including reporting as required, providing proof of employment, and making herself available for home visits. Mr. Sparks, who had supervised the Defendant for about six weeks by the time of the hearing, confirmed that she was compliant with all current supervision requirements and that there were no pressing issues requiring correction.

The nonpayment allegation, therefore, represents the first instance of a technical violation. As such, even if the trial court found a violation on this basis, the Defendant's suspended felony sentences could not be subject to revocation proceedings on this basis. *See Noel*, 729 S.W.3d at 325 (holding that a first-instance technical violation of a felony suspended sentence is not subject to revocation proceedings under Tennessee Code Annotated section 40-35-311(d)(2)).

Each of these grounds independently supports the same result. The trial court made no violation finding on this basis. But even if it had, the record does not establish that the Defendant willfully refused to pay, and this first-instance technical violation of a felony suspended sentence would not be subject to revocation proceedings in any event. *See* Tenn. Code Ann. § 40-35-311(d)(2); *Noel*, 729 S.W.3d at 325. Accordingly, we conclude that the Defendant's suspended sentences could not be revoked on these grounds.

## CONCLUSION

In summary, we conclude that the record contains no substantial evidence to support the trial court's finding that the Defendant violated the conditions of her suspended sentences. We further conclude that the nonpayment allegation provides no independent basis for revocation. Accordingly, we respectfully reverse and vacate the revocation order and remand the case for dismissal of the revocation proceedings.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE